FRANK M. THOMPSON, *Territorial Treasurer*, v. TERRITORY OF OKLAHOMA.

(Filed Sept. 4, 1900.)

TERRITORIAL TREASURER—*Territorial Funds—Interest On Belongs to Territory*. Territorial funds received by the territorial treasurer remain the moneys of the territory until paid out according to law, and the treasurer and every other person charged with the receipt, safe-keeping or disbursement of such funds is prohibited from loaning them either for his own private use of for the use of the territory, and from in any way appropriating them to his own private use. The territorial moneys must be preserved by the treasurer and remain under his control, at all times, so that they may be forthcoming at any time to meet the obligations of the territory, but the treasurer, although not required so to do, may deposit territorial funds in a bank in his official capacity and accept interest from such bank for daily balances, provided the moneys remain absolutely under his control and subject to payment on his demand; but the interest received on such deposits, being earned by the funds of the territory, becomes territorial moneys in the treasurer's hands, for which he must account, and he has no right whatever to appropriate such interest or any part thereof to his own use or benefit.

(Syllabus by the Court.)

*Appeal from the District Court of Logan County; before John H. Burford, District Judge.*

*Dale & Bierer*, for appellant.

*J. C. Strang, Attorney General,* for appellee.

Opinion of the court by

BURWELL, J.: This case was submitted to the trial court on a stipulation signed by J. C. Strang, the attorney general, on behalf of the Territory. and by Messrs Dale & Bierer, the attorneys for the defendant.

The record presents the sole question as to whether or not the plaintiff in error is bound to account to the Territory for interest in the sum of $5,603.00 which he received from the Guthrie National Bank for the deposit of territorial funds with such bank while he was acting as territorial treasurer, to which position he had been duly appointed. For some reason, undisclosed by the record, the treasurer was not sued on his official bond; his bondsmen were not parties to the suit. The action was commenced against Mr. Thompson individually, as territorial treasurer, and although a certified copy of the treasurer's bond is attached to the record, there is no reference to it in any of the pleadings or orders of the court.

The identical question involved in this case has been before the courts of the different states a number of times, and the authorities are somewhat conflicting. In fact, in some instances, the same court has apparently held both ways on the question, but as this is the first time that this court has been called upon to lay down a rule for this Territory, we shall not attempt to harmonize and distinguish the apparently conflicting authorities of other states; nor shall we feel obliged to follow the weight of authority if, in our judgment, some other rule is better and safer, and is in line with true legal principles when considered in connection with our own statutes.

The plaintiff in error contends that when he received any money as territorial treasurer, under the law it became his individual money, and he had a legal right to do what he pleased with it; that he had given a bond as required by law to account for all moneys coming into his hands; and that the Territory must look to the bond alone; and that the simple relation of debtor and creditor existed between him and the Territory when there was any money in his hands which was received in his official capacity; and that as he was only a debtor of the Territory, he had a legal right to loan the funds, receive interest thereon, and to keep the same for his own private use and benefit.

The appellant, in addition to authorities from other states, cites the case of *Van Trees et al. v. The Territory*, 7 Ok. 353, as supporting the position that the relation of debtor and creditor only exists between the treasurer and the Territory. The language of this opinion will not authorize such position. The law of the case is stated in the syllabus; and even if the justice who wrote the opinion, in discussing the question of the liability of the county treasurer on his official bond, had used the language which might indicate the views of the court upon the questions now under consideration, it would be treated as *dictum,* because the question in this case was not in that case at all. The only question decided in that case which has the remotest bearing upon this case was that, in an action on an official bond of a county treasurer, the fact that the moneys were deposited in a colvent banking institution which thereafter failed, resulting in the loss of the funds, without any fault or negligence on the part of the treasurer, constitutes no defense to said action.

It is true that the court in the Van Trees case said that a county treasurer is held to a strict liability for moneys coming into his hands in his official capacity, but an examination of this case will show that the decision is based upon our own statutes, and the conditions of the statutory bond which the county treasurer voluntarily executed; and while the court also said that it could not assent to the doctrine that a public officer entrusted with public funds and required to give bond for the faithful performance of his official duties, is a mere bailee of the money, bound *virtute officii* to exercise good faith and reasonable skill and diligence in discharge of the trust confided in him, it had reference to a mere bailee at common law.

Counsel for appellant have filed a voluminous brief, in which they cite a number of cases which support their contention that the territorial treasurer is a debtor of the Territory, and is entitled to interest received on the funds in his hands; and perhaps the greater number of adjudicated cases adhere to that rule. But without expressing any opinion as to the correctness of these cases, under the statutes of the states from which they come, we decline to follow them, because under our statutes we believe that the territorial funds in the hands of the territorial treasurer is not the treasurer's individual money, but remains the money of the Territory until properly paid out by the treasurer in the due course of his official duties; and the fact that the legislature has failed to provide a public depository for the territorial funds makes no difference.

An examination of our statutes from beginning to end fails to disclose a single section which indicates that the

treasurer becomes the owner of the public moneys in his hands; but, on the contrary, all through the statutes, the territorial funds are treated as property of the Territory. We have carefully examined the authorities cited by appellant, and are familiar with the reasoning of these cases but are unable to adopt the views therein expressed. The most of the cases are decided upon the theory that, whenever a public officer is held to a strict liability, it necessarily follows that he is a debtor and not a bailee or trustee, and therefore the money in his hands is his money. It is true that an ordinary trustee or bailee is bound to exercise only that diligence which one should prudently use in his own affairs of a like character, and cannot be held to a strict account; but the territorial treasurer is not that kind of a bailee or trustee. In our judgment he is a bailee or trustee, but his liability is not measured by the common law rules as to bailment and trusteeship alone. It is measured by the rules of the common law as modified by the modern decisions of the courts, the conditions of his bond, and by our own statutes, and he receives the public moneys as a public officer, and not as an individual, and by the express provisions of the statutes (sec 5958, Stats. 1893), he can be compelled to submit his books, accounts, vouchers, and the funds in the treasury to the inspection of either branch of the legislative assembly or to any committee appointed for that purpose by the legislative assembly or by the governor, and the committee so appointed are empowered to administer to the treasurer an oath, and it is made their duty to rigidly examine him and all his clerks, deputies and others under oath touching all matters connected with the business of his office, and the committee are to require the funds of the Territory in the hands of the

treasurer to be produced in cash and counted in their presence, and shall see that the money so counted is not borrowed, and to determine the fact the committee may compel any and all persons to appear before them on subpoena issued by them and served, and testify fully; and if the committee have good reason to believe that any part of the money so offered to be counted is borrowed, they shall retain all of the money so offered as the funds of the Territory and place it in safe keeping until the matter be fully investigated; and if the treasurer be retained in office, the funds shall be returned to him, and if not retained, they shall be paid to his successor as soon as he may be inducted into office.

From these provisions of the statutes it is clear that the legislature never intended that the treasurer's bond alone should stand in lieu of the territorial funds in the treasurer's hands, and to make the treasurer simply a debtor of the Territory. If so, why should the treasurer be required to submit the cash to be counted and then compelled to see to it that the money is not borrowed for that occasion? By inference, which is as strong as express language, the section of the law above referred to makes it the duty of the treasurer to hold the territorial funds to meet the obligations of the Territory whenever needed for that purpose, and not to use the funds for any private purpose whatever. A law that would compel a debtor to submit his cash to be counted by his creditors at any and all times that his creditors might desire to count it would be *sui generis* indeed; and while we agree with the authorities cited by appellant in that if the money is the treasurer's money he has the right to loan it or do what he pleases with it, the money is not his. If it were, he could use it in any way he chose until needed in the course of

the administration of his office for the payment of warrants, etc., or until the expiration of his term; and if it did not belong to the Territory, he would not be required to submit it to the committee to be counted whenever the legislature or the governor desired. If the money were the treasurer's, the legislature and the governor would investigate to see as to whether or not his official bond was good; to see if the obligation which he had executed to the Territory for the faithful discharge of his office were a sufficient protection to the Territory. The Territory would be interested in knowing that those who signed his bond were responsible, and would care nothing about the amount of cash the treasurer had, so long as he paid out the funds when it became his duty so to do. The legislature intended to absolutely prohibit the treasurer from using the public funds for any private purpose, and makes it a crime for any such officer to appropriate to his own use any public funds.

Section 2304, Stats. 1893, provides:

"Every public officer, and every deputy or clerk of any such officer, and every other person receiving any moneys on behalf of or for account of this Territory, or of any department of the government of this Territory, or any bureau or fund created by law and in which this Territory or the people thereof, are directly or indirectly interested, who either:

"First: Appropriates to his own use, or to the use of any person not entitled thereto, without authority of law, any money received by him as such officer, clerk or deputy, or otherwise, on behalf of this Territory, or the people thereof, or in which they are interested; * * * is guilty of a felony."

Can there be any question but that the treasurer receives the moneys, which come into his hands, on be-

half of the Territory, and that if he loans the same out for his own benefit that such loaning is an appropriation of such funds? Certainly not. And by the provisions of this section he would commit a felony by withdrawing moneys from the funds of the Territory and loaning them for his own private gain; and it is hardly probable that the legislature would enact a law making the treasurer the debtor of the Territory for all moneys which he received on behalf of the Territory, and look to his official bond as a substitute for the money, and then make it a felony for him to appropriate the same to his own use. That would be inconsistent and unreasonable; and courts will always give statutes a reasonable construction, if susceptible thereof. The only reasonable view to take of the law, taking all of its different parts together, is that all moneys which the treasurer receives in his official capacity remain the funds of the Territory until paid out according to law. This, in our judgment, is not only the law, but it is the safer rule for the Territory. If the funds were to be treated as the money of the treasurer, it would open up the door to fraud and corruption for those who wish to take advantage of such fact; and even in the absence of fraud, it would place before comparatively honest men great temptations to speculate with the funds in hazardous enterprises, or to loan the moneys on doubtful securities at a high rate of interest; and again, the banks in which the moneys were deposited could be garnished as debtors of the treasurer, and the public revenues taken to pay the treasurer's private debts, and then when the funds were lost the Territory would have no revenues with which to pay the expenses of government until collection could be made on the bond, which, in the ordinary

course of such matters, would take months and, possibly, years.

There is one other suggestion that comes to our minds in considering the appellant's theory of this case, which we will here suggest; and that is this: If the treasurer, under the law, becomes the owner of all moneys received in his official capacity, he is bound to pay taxes on all of these moneys, no matter whether he receives interest thereon or not. He cannot be the owner for the purposes of profit and not for the purposes of taxation.

From reason and written law, we think it is apparent that what the legislature intended was to preserve the fund itself so that it can be used when needed, and while the governor may at any time require the treasurer to give a bond larger than the sum designated in the statutes, it must be remembered that this bond is only to secure the faithful performance of the treasurer's official duties, and an accounting for the moneys which he may receive; and for the purposes of this case it is not necessary to determine as to whether a loss of the fund by the act of God or by some influence which is entirely beyond the control of the treasurer can be pleaded as a defense to an action on the treasurer's bond. That question is not before us. The fund has not been lost. On the contrary it is presumed to be in the hands of the treasurer. But we will here suggest that, in our judgment, there is no reason why a treasurer cannot act in the capacity of agent, bailee or trustee, and still be bound absolutely for the safety and accounting of the funds which he receives. Even in the absence of statutory provision we believe it to be the duty of courts to hold officers to a more strict liability for funds which they receive in their official

capacity than was imposed upon ordinary bailees or trustees at common law. So long as the legislature fails to provide a particular place for the deposit of the fund the treasurer may determine for himself as to where he will keep it, but it never becomes his money. It is true, as a public officer, he may have an interest in it, but this interest is purely legal, and this legal title exists only to that degree which will enable him, as the representative of the Territory, to preserve the fund for it. He has no such interest as authorizes him to speculate with the territorial moneys for his own benefit. He is simply the custodian of the moneys for the Territory; but instead of directing him where to keep the funds the legislature, in effect, made it his duty to find some suitable place where they may be safe and forthcoming when required. Public officers are not elected for their individual benefit, but for the benefit of the public. They are only the representatives of the people. For their services the law fixes the compensation; and particularly is this true in the case at bar, for the statutes not only fix the treasurer's salary, but further say (sec. 5959, Stats. 1893), that he shall not receive any fee or reward aside from his salary for transacting any business connected with the duties of his office. And even if true, as contended by appellant, that the loaning of these funds for the treasurer's own benefit was not connected with the duties of his office, as contemplated by the above section, it is clear that the legislature meant that the treasurer should not, under any circumstances, receive more than his annual salary. For this salary the Territory has a right to expect strict fidelity, and a public officer entrusted with the safe-keeping of public funds has no right, without authority of law, to jeopardize their safety for his own personal gain.

The construction which we have here placed upon our statutes harmonizes every section with every other portion thereof in reference to the subject under consideration, while the position taken by appellant would make the criminal code conflict with the civil, and under the well established rule that statutes *in pari materia* shall be construed together, we are forced to the conclusion that the position taken by appellant is not tenable.

Now, having held that the funds in the treasurer's hands belong to the Territory and it being admitted that the treasurer deposited the same and received $5,603.00 interest thereon from The Guthrie National Bank, can he be compelled to render an account for the same? While counsel for appellant insist that the treasurer was the owner of all moneys which came into his hands, they also contend that even if the moneys belonged to the Territory the appellant is entitled to the interest, inasmuch as there is no provision of the statute for the treasurer to loan the funds, and that it will not follow that he is civilly liable for the interest just because he may be amenable to the criminal law for an appropriation of the principal; and that if the fund were produced or accumulated by a criminal act by the treasurer, the Territory cannot accept the fruits of such crime. One might be criminally liable for a certain act, and still not be liable in damages civilly, but that is not the general rule; and, at any rate, in a case of this kind, even if the treasurer had committed a crime by accepting interest on the funds, he is estopped from saying that he had no authority to accept such interest. He used the moneys in such a way as to make them earn interest. For their use he admits he received a certain sum of money. The moneys of the Territory earned these profits, and even if the transaction were an unlawful one,

the treasurer will not be permitted to take advantage of his own wrong and reap the benefits thereof. And even if the deposits were not a loan as that term is generally used (and some of the courts make a distinction between a deposit on which interest is paid upon daily balances, and a loan or time deposit) but a deposit subject to check at any time, the accretion belongs to the fund which earned it. (*State v. McFetridge*, [Wis.] 54 N. W. 1, and cases therein cited; *State v. Hardshaw et al.*, 54 N. W. 17; *State v. Sawyer et al.*, id. 998; *Mayor of New York v. Nat'l Bdwy. Bank*, [N. Y.] 27 N. E. 555; *U. S. v. Nosby*, 133 U. S. 273; *Cooper v. People*, 85 Ills. 417; *Chicago v. Gage*, 95 Ill. 593.) And this is true regardless of whether or not he has a right to accept interest on such funds.

Sec. 5692, Stats. 1893, provides:

"If any county treasurer, other officer or person charged with the collection, receipt, safe keeping, transfer or disbursement of the public money or any part thereof, belonging to the Territory or any county, precinct, district, city, town, or school district in this Territory, shall convert to his own use or to the use of any other person or persons, body corporate, association, or party whatever, in any way whatever; or shall use by way of investment in any kind of security, stocks, loan property, land or merchandise or in any other manner or form whatever; or shall loan with or without interest to any company or corporation, association or individual, or if any person shall advise, aid, or in any manner knowingly participate in such act, every such act shall be deemed and held in law to be an embezlement of so much of said money or other property as aforesaid, as shall be thus converted, used, invested, loaned or paid out as aforesaid, which is hereby declared to be a felony; and upon presentation, trial by indictment and conviction thereof before any court of competent jurisdiction in this Territory, such county treasurer or other officer or person shall be sentenced to im-

prisonment in the penitentiary and kept at hard labor for a term of not less than òne nor more than twenty-one years, according to the magnitude of the embezzlement, and also to pay a fine equal to double the amount in money or other property so embezzled as aforesaid; which fine shall operate as a judgment lien at law on all the estate of the party so convicted and sentenced, and shall be enforced by execution or other process for the use only of the party or parties whose money or other funds, property, bonds or other securities, assets or effects of any kind as aforesaid have been so embezzled; and in all cases such fine so operating as a judgment shall only be released or entered as satisfied by the party or parties in interest as aforesaid."

. This section is so plain that it requires no judicial. interpretation to enable an ordinary person to understand that the treasurer cannot appropriate the public funds to his individual use or profit in any way whatever; nor can he loan the funds for the benefit of the Territory. But the agreement made between the treasurer and the bank was not, in our opinion, a loan of the funds as contemplated by sec. 5692, and the treasurer committed no crime in accepting payment from the bank for the deposit. The treasurer deposited the funds with the bank, which he had a legal right to do. They were subject to his check as treasurer at any time. He was compelled to deposit them either in this or some other bank or depository for safety. The moneys at all times were under his control. Under the provisions of the stipulations it will be presumed that the moneys were deposited in appellant's name, as territorial treasurer, and taking everything into consideration, speaking from the record, we see no reason why the treasurer could not, for the benefit of the Territory, accept interest from the bank for daily balances, so long as the funds remained under his control

and payable on his demand.   It is probably true that the bank with which the moneys were deposited would not lawfully invest or loan them, as the section of the statutes just quoted prohibits any person charged with the "safe keeping" of the funds from loaning or investing them in any way whatever; and a bank which accepts territorial funds on deposit is charged with the "safe keeping" thereof, and is a person under the provisions of sec. 2676 of the Statutes of 1893.   But that question is not before us, and for the purposes of this case it is immaterial whether or not the bank could use the moneys.   It wanted the deposit, for it paid the treasurer for the same, and the fact that the bank could not employ the money, or use it in any way, is no good excuse why the treasurer should not account for the interest he received.   Under the law the treasurer was not bound to contract for interest for the deposit, but having received interest he must account for it.

Mr. Justice Grier, speaking for the supreme court of the United States, in the case of *Barney v. Saunders*, 16 Howard, 543, said:

"It is a well settled principle of equity, that wherever a trustee, or one standing in a fiduciary character, deals with the trust estate for his own personal profit, he shall account to the *cestui que trust* for all the gain which he has made.   If he uses the trust money in speculations, dangerous though profitable, the risk will be his own, but the profit will inure to the *cestui que trust*.   Such a rule, though rigid, is necessary to prevent malversation. See *Docker v. Somes*, 2 My. & K. 655. The money used in purchase of the house, having been settled by the transfer of the same to the complainants, the subject matter of the present exception has been confined to the usurious interest received.   It amounts only to the sum of $66.00.

The auditor and the court erred in not charging that sum to the accounts. They cannot be allowed to aver that the profits made on the trust funds should be put in their own pockets, because they were unlawful gains, for fear that the conscience of the *cestui que trust* should be defiled by a participation in them. To indulge trustees in such obliquity of conscience, would be holding out immunity for misconduct and an inducement to speculate with the trust funds, and put them in peril."

And again, in *U. S. v. Mosby*, 133 U. S. 273; Mr. Mosby who was the custodian of certain government funds, had deposited them and received interest thereon. This interest was disallowed by the department. He then accounted for it and brought suit against the United States to recover the same back. The court said:

"Item c, in finding 12, is, 'Interest on deposits at the bank (public moneys deposited between February 4, 1879, and June 30, 1882), $104.41.' This was disallowed, and we think properly. The moneys are stated to be, 'public moneys,' in respect to which the counsel (Mr. Mosby) was trustee, and any interest which he received on the funds belonged to the United States. He was not required to put the funds out at interest, but if he did so the accretion belonged to the government."

After a careful examination of all of the authorities at our command, no matter what rule obtains in other states under the statutes in force therein, we are satisfied that under our own statutes and the general rules of law applicable to the case at bar, the judgment of the trial court should be affirmed, at the cost of the appellant. It is so ordered.

Burford, C. J., who presided at the trial below, not sitting; McAtee, J., not present; all of the other Justices concurring.