Leo WINTERS, Plaintiff,

v.

GOVERNOR'S SPECIAL COMMITTEE to Investigate the Office of Treasurer of the State of Oklahoma, W. R. Wallace, Jr., Chairman, John Rooney, Member, and Milt Phillips, Member, Defendants.

No. 42794.

Supreme Court of Oklahoma.

Dec. 20, 1967.

Pierce, Duncan, Couch & Hendrickson, by Paul Duncan, Oklahoma City, for plaintiff.

W. J. Monroe, W. Howard O'Bryan, Jr., Sam Hellman, Asst. Attys. Gen., by W. Howard O'Bryan, Jr., Oklahoma City, for defendants.

McINERNEY, Justice.

Invoking the original jurisdiction of this court, the State Treasurer seeks a writ of supervisory control directing the committee appointed by the Governor, pursuant to the provisions of 74 O.S.1961, § 369, to contain its present investigation of his office within the allowable bounds of pertinent inquiry contemplated by the terms of that enactment. The cited statute under consideration provides in its pertinent part:

"He [the State Treasurer] shall as often as required submit his books, accounts, vouchers and the funds in the Treasury to the inspection of either branch of the Legislature, or any committee appointed for that purpose by the Legislature or by the Governor; and the committee so appointed are hereby empowered to administer to the Treasurer an oath, *and it shall be their duty to rigidly examine him and all his clerks, deputies and others under oath touching all matters connected with the business of his office*; such committee shall require the funds of the State in the hands of the Treasurer not legally deposited in a bank to be produced in cash, and counted in their presence, and shall see that the money so counted is not borrowed, and to determine that fact, may compel any and all persons to appear before them on subpoena issued by them and served and testify fully, and if they have good reason to believe that any part of the money so offered to be counted is borrowed, the committee shall retain all the money so offered as the funds of the State, and place it in safe keeping until the matter is fully investigated, and if the Treasurer be retained in office the funds shall be returned to him, if not retained, the funds shall be paid to his successor as soon as he may be inducted into office. If there is good reason to suspect any fraud in the Treasurer, the Governor shall appoint such committee and order an investigation." (Emphasis supplied.)

As is apparent from the quoted outline of the duties imposed upon the investigating committee, its function is non-adjudicatory and, to a large extent, fact-finding. It does not hold a trial to determine anyone's civil or criminal liability. It does not issue orders; does not impose any legal sanctions; but is called upon to ascertain whether there is "good reason to believe that any part of the money so offered to be counted is borrowed" and to decide whether "to place the money in safe keeping". In this respect the committee doubtless performs a function of a quasi judicial character. "A quasi judicial power is one imposed upon an officer or a board involving the exercise of discretion, judicial in its nature, in connection with and as incidental to the administration of matters assigned or entrusted to such officer or board." Green v. Board of Com'rs of Lincoln County, 126 Okl. 300, 259 P. 635, 637; see also, Mills v. Smith, Okl., 355 P.2d 1064, 1066; State ex rel. Tharel v. Board of County Com'rs of Creek County, 188 Okl. 184, 107 P.2d 542, 549.

Without suggesting that all executive, legislative, or judicial investigative agencies possess identical attributes, the courts have on more than one occasion likened an

investigative agency of the executive branch of government, similar to this committee, to a grand jury. See e.g., Oklahoma Press Pub. Co. v. Walling, 327 U.S. 186, 216, 66 S.Ct. 494, 90 L.Ed. 614, 633, 166 A.L.R. 531; Hannah v. Larche, 363 U.S. 420, 449, 80 S.Ct. 1502, 4 L.Ed.2d 1307, 1325.

■ By the terms of Art. VII, § 4, Okl.Const., this court is vested with general superintending control "over all inferior courts and all Agencies, Commissions and Boards created by law." Especially in cases where no remedy by appeal is available, the original jurisdiction of this court may properly be invoked to review, by certiorari or otherwise, quasi judicial or even ministerial acts of public officers for the purpose of determining whether they have kept within, or exceeded, the powers conferred upon them by law. Duncan v. Askew, 207 Okl. 542, 251 P.2d 515; Claiborne v. Joint Consol. School Dist. No. 7, Green and Jackson Counties, 195 Okl. 215, 156 P. 2d 602; Application of State Board of Medical Examiners, 201 Okl. 365, 206 P.2d 211; State ex rel. Nesbitt v. Ford, Okl., 434 P.2d 934 (38 OBJ 1826). This principle was discussed at length in State ex rel. Heartsill v. County Election Board of Carter County, Okl., 326 P.2d 782, 786. In that case the court granted a writ prohibiting the county election board, a part of the executive branch of the government, from exercising its discretion in a purely legal matter properly presented to that board. The court stated:

"The respondent Board also argues briefly that this court should not grant the writ applied for because, in sustaining the protest to petitioner's Notification and Declaration of Candidacy, it was engaged in a purely ministerial duty or exercise of executive power, citing State ex rel. Caldwell v. Vaughn, 33 Okl. 384, 125 P. 899. They say this court has many times held that a writ of prohibition is to prevent an inferior judicial tribunal from exercising, or exceeding, judicial power not possessed by it, and that such writ will be issued only in cases of necessity, and not in 'doubtful' ones. While it is true that courts may not, by extraordinary writ, control a body, such as an election board, in the performance of its ministerial acts, nor ordinarily review its exercise of discretion, yet, where the act involved is quasi-judicial, rather than ministerial, and the public has an interest, or the refusal of this court to take jurisdiction would result in a practical denial of justice, our power to grant such a writ is beyond question. See authorities cited in Yocham v. County Election Board of Creek Co., 198 Okl. 588, 180 P.2d 831."

The treasurer complains, and the Attorney General concedes, that the committee seeks to extend the scope of its investigation by inquiry into: 1) his personal financial affiars over a period of time commencing before his term of office; and 2) the possibility that he has personally benefited, directly or indirectly, through an arrangement by which some banks, as a condition of receiving state money deposits, were required to maintain interest free or "complimentary accounts" of sizeable amounts in certain designated banking institutions.

It is asserted by the treasurer that the attempted extension of inquiry lies clearly outside the allowable scope of the committee's statutory authority and is utterly unwarranted because there is here *no* indication that any of the liquid funds for which the treasurer has already fully accounted were in fact borrowed in an effort to balance his books; nor does it appear that any deposits of state money placed by the treasurer are inadequately secured. In short, it is the treasurer's position that neither his personal financial affairs nor the possibility of his having received improper benefits from banks obtaining state deposits forms a pertinent subject of inquiry by an investigating committee convened under the terms of 74 O.S.1961, § 369.

The respondent committee is a creature of the legislature. Its investigatory powers are limited by the plain language of the statute which clearly contemplates a simple inquiry into the safety of state funds rather than an extended general inquisition into the treasurer's conduct in matters totally unrelated to actual misappropriation or defalcation sought to be concealed by the use of borrowed money to cover an existing deficiency in the treasury. The protection of public money is plainly the sole object of the investigation the statute contemplates and the committee is authorized to conduct. The statute admits of no other construction as its language unmistakenly indicates this to be the extent of the State interest.

The extent of the inquiry the committee may conduct and the determination of its necessity were not matters left in the discretion of the investigators but were clearly spelled out by the legislature by the terms of § 369, supra. All governmental organs, including investigatory bodies, must remain within the bounds of the law, and it is this court's duty to confine them within the outer limits of their legal authority. Oklahoma Tax Commission et al. v. Clendinning, 193 Okl. 271, 143 P.2d 143.

"The State of Oklahoma is an inseparable part of the Federal Union, and the Constitution of the United States is the supreme law * * *" within its borders. Art. 1, § 1, Okl.Const. When a state investigating agency extends its inquiry to matters wholly unrelated to the legislative object, the Due Process of the Fourteenth Amendment "would preclude the endangering of constitutional liberties". Sweezy v. State of New Hampshire by Wyman, 354 U.S. 234, 254, 77 S.Ct. 1203, 1214, 1 L.Ed. 2d 1311, 1317. Freedoms protected against invasion by the First Amendment should not be placed in danger in the absence of a clear legislative determination that a need exists for, and state interest demands, a particular inquiry by an investigative organ of government. There is no power in either judicial, executive or legislative branch of the government "to expose for the sake of exposure". Watkins v. United States, 354 U.S. 178, 200, 205, 77 S.Ct. 1173, 1184, 1 L.Ed.2d 1273. The lack of any indications in the statute itself that the legislature desired the information the committee seeks to elicit here concerning the treasurer's activities must be regarded as the absence of statutory authority to carry the inquiry into that area. Sweezy v. State of New Hampshire by Wyman, supra.

Chapter Thirteen, Title 74, State Officers and Employees, State Treasurer, §§ 361 to 372, inclusive, sets out the duties of the office of State Treasurer, the bond required, procedure for the accounting of state funds and those received from counties, receipt of warrants and interest thereon, his semi-annual and biennial report to the governor, an examination of his books and money (§ 369) by the legislature or any committee appointed for that purpose by the legislature or by the Governor, prohibiting the treasurer from purchasing a warrant or receiving any fee or reward for transacting any business connected with the duties of his office, holding the treasurer accountable for loss suffered by the public revenue by his neglect or delinquency and providing for deposits with the State Treasurer by a city.

We note at this time that the asserted scope of jurisdiction, as set out in Rule 2 of the rules of the special committee, provides that "the committee shall conduct hearings at which evidence shall be adduced from witnesses or documentary evidence relating to whether or not the State Treasurer has deposited State Funds in banks in Oklahoma in such manner as to obtain personal benefit therefrom." It is stated in Rule 1 that the hearings are being conducted pursuant to a letter from the Governor, but the hearing may only be conducted at the request of the Governor for the purpose set out in the statute, 74 O.S.1961, § 369, and may not be expanded by anyone other than the legislature, and, even then, only within the allowable limits

of federal due process set out in the Sweezy case, supra.

There is no *express* provision contained in § 369, supra, which would permit the committee to investigate the matters stated within their asserted scope of jurisdiction, to-wit: personal benefit to the treasurer by his depositing of state funds; and the jurisdiction therefore does not exist unless it is necessarily implied from the grant of authority contained in the statute. The matters stated by the committee in their Rule 2 are specifically covered by Art. 10, § 11, Okl.Const. and 21 O.S.1961, § 341(2) and made subject to criminal prosecution.

The duties of the office of state treasurer are set out in 74 O.S.1961, § 362 and provide that "(H)e shall have charge of and safely keep all public moneys which shall be paid into the State Treasury, and pay out the same as directed by law." He is simply the custodian of the moneys for the state and is charged with the duty to pay warrants against this money when the same are legally presented. He must accept on behalf of the State any interest received on the deposit of state money and account for it. Thompson v. Territory, 10 Okl. 409, 62 P. 355. This section, together with sections 361 to 371 inclusive, was brought into our present laws intact, with only minor revisions in the other sections, not important here, from Statutes 1890 and first appeared after statehood as Revised Laws 1910, § 8136, along with our present section 369, which appeared as Revised Laws 1910, § 8143. The duties of this office, as contained in Chapter Thirteen, 74 O.S.1961, § 361 et seq., have not been changed since statehood, although additional duties have been prescribed in other statutes, more particularly 62 O.S.1961, § 71 et seq., relating to the deposit of state funds in state depositories. The section we are called upon to construe in this proceeding is contained in Chapter Thirteen, 74 O.S.1961, § 361 et seq., and must necessarily be considered in context with that chapter.

The office of State Treasurer is created by Article VI, § 1 of the Constitution of Oklahoma. The duties of the office are prescribed in Chapter Thirteen, 74 O.S. 1961, §§ 361–372. The committee appointed by the Governor may thoroughly examine the Treasurer, his clerks, deputies and others to determine that his books, accounts, vouchers and funds are correct and that the public money is being safely kept. The committee is empowered to compel all funds not legally deposited to be produced in cash and counted in their presence, and may issue subpoenas to determine that the money being counted was not borrowed for the purpose of fraudulently balancing the books. Once the committee has determined that the public funds in the hands of the State Treasurer are being safely kept and have been accounted for, and that there is no misappropriation or defalcation of public money, its duty is fully and completely discharged.

After reporting about the business of his office and accounting for the state funds, the treasurer, like any other public official, state or county, or member of the Legislature, falls under the provisions of Art. 10, § 11, Okl.Const., prohibiting the receiving, directly or indirectly, of any interest or profit arising from the use or loan of public funds, and 21 O.S.1961, § 341(2), incorporating the constitutional provision therein and providing for criminal sanctions for its violation. State v. West, 14 Okl.Cr. 410, 171 P. 1128 (grand jury indictment involving county treasurer) and State v. West, 14 Okl.Cr. 405, 171 P. 1127 (information charging violation of Penal Code, § 2581, Revised Laws 1910, now 21 O.S.1961, § 341). The power to inquire into public offenses against the state is vested in a grand jury under the control and direction of a District Court, Art. 2, § 18, Okl. Const., and we find no grant of authority necessarily implied by the terms of § 369, supra, giving a special committee similar extraordinary investigative powers. Certainly the office of State Treasurer, and the

person holding the office, is under no greater obligation, and subject to no less scrutiny, to obey the law or suffer the criminal sanction for failure to do so than any other official. By the same reasoning, he is entitled to be proceeded against the same as any other official for a violation of his duty which might result in the imposition of a criminal sanction.

A State Depository Board consisting of the Governor, Attorney General and State Treasurer was created by Revised Laws 1910, § 6779, and, by various amendments, now authorizes the treasurer to deposit funds coming into his hands as the official depository into any one of a number of banks within the state selected by the Board, providing the deposit shall be limited to the amount of approved legal securities, 62 O.S.1961, § 71, and providing further that before the State Treasurer shall be authorized to deposit the public money in his custody in any bank, the legal security provided for shall be examined and approved by the Governor, the Attorney General and the State Treasurer, 62 O.S. 1961, §§ 73 and 77. Chapter One of 62 O.S.1961, §§ 71–87, inclusive, control, and are the only limitations upon, the deposit of state funds in other than the official depository, the office of State Treasurer. The treasurer is given custody of the public fund by virtue of 74 O.S.1961, § 362 and the authority to deposit this fund for safekeeping in an approved bank under such terms and conditions as he shall impose, subject to the limitations contained in 62 O.S.1961, § 71 et seq. creating the State Depository Board. His duty to account is provided for in 74 O.S.1961, §§ 368 and 369.

The conduct, operation and management of the individual state banks selected as depositories is controlled by the Commissioner of the Banking Department and the Banking Board under the comprehensive provisions of the Oklahoma Banking Code of 1965, 6 O.S.Supp.1965 § 101 et seq. The powers of the Board are set out in § 203, supra, and of the Commissioner in §

204, supra, and the Commissioner and the Board are given the power to subpoena witnesses and conduct investigations, § 206, supra. Expanding the scope of the investigation by the special committee, charged with the duty of inquiring into the business of the office of the State Treasurer, to include an inquiry into the operation and management of individual banks is an encroachment on the duties of the Commissioner, which duties may not be avoided or delegated by the Commissioner to a quasi judicial board created by the Governor. If the Commissioner suspects a lack of good faith or the practice of unsound business practices by a state bank under his jurisdiction, he is charged with the statutory duty to investigate such practices, and he is given ample authority to cause such practices to cease. If a national bank is involved and these practices concern the deposit of public money, or its safekeeping, the Banking Commissioner has sufficient interest to request, and with the assistance of the State Depository Board and Federal Reserve Bank, to require the cooperation of the national bank. The responsibility by statute to regulate and investigate the practices of banks remains that of the Commissioner and the Banking Board. There is not here presented, nor do we determine in this opinion, the extent of the power of the Bank Commissioner to conduct hearings pursuant to the authority of the Oklahoma Banking Code of 1965, 6 O. S.Supp.1965 § 101 et seq.

The Attorney General asserts that available evidence induces strong belief the treasurer has improperly accepted low-interest or interest-free loans from some banks in which state deposits were placed. We are urged that the benefits so received by the treasurer belong to the state on the theory that one standing in a fiduciary capacity must account to his cestui que trust "for all the gain which he has made" in the management of the trust estate.

■ This proposition, although manifestly sound, sheds no light on the statutory pertinence of the extended inquiry

sought to be conducted. If the treasurer did in fact breach his fiduciary duty to the state by improperly benefiting from the management of his trust estate, he is obviously subject to both criminal and civil liability in a proper action to be instituted for that purpose in a competent forum. He may be compelled to "disgorge" any profits made from his asserted unfaithful management. The committee is not the proper forum before which the state's claim may be pressed. It is not concerned with any matter not contained within the legislative grant of power. The state's title to gains improperly retained in breach of the treasurer's fiduciary duty presents a question of equitable accounting and surcharge. The narrow scope of § 369 neither embraces nor contemplates a fiduciary accounting of unadjudicated equitable claims which the state may have. It is expressly limited to accounting of "the funds of the State in the hands of the Treasurer", a purely legal audit.

The importance of this case requires us to emphatically note that this opinion does not operate to shield any one from exposure of his alleged corruption. The full machinery of criminal and civil process of the State *remains entirely unimpaired by this decision.* We rule here only on the outer limits of the committee's statutory powers—not on the powers of other officials to deal with corrupt practices or to proceed against the accused officials in the manner provided by law.

It is suggested by the Attorney General in his brief that the doctrine of separation of powers, as provided for in Art. 4, § 1 of the Constitution, inhibits the granting of the relief sought. The Governor, or the Legislature, may properly appoint a committee for the purpose contained in 74 O.S.1961, § 369, and the Governor has properly done so. There is no attempt to challenge the authority of the Governor, nor to restrict his actions in this regard. After their appointment and their commencing to operate as a quasi judicial body, the committee is then subject to the same control and supervision as any other board or commission, whether created by the Governor or the Legislature, for the reasons stated above.

We hold that the committee convened by the Governor pursuant to the provisions of 74 O.S.1961, § 369 is without statutory power to conduct a general investigation into the alleged misconduct in office of a state treasurer, but must confine its inquiry to ascertaining the safety of state funds under his control and to matters directly related to any misappropriation or defalcation sought to be concealed by borrowed funds used to cover existing deficiency.

We have full confidence that the committee will conform to the views expressed in this opinion and hence deem it unnecessary to issue a writ of supervisory control. State of Okl. v. Ford, supra. Inasmuch as the committee investigation is presently in progress and specific questions may arise in the future concerning some particular subject of inquiry attempted to be pursued, we find it appropriate to state that a writ of certiorari may issue by the district court to review proceedings of an officer where it is alleged that he was acting in a quasi judicial capacity but was without authority to do the things complained of. Claiborne v. Joint Consol. School Dist. No. 7, Greer and Jackson Counties, supra; House v. Musick, 185 Okl. 264, 91 P.2d 676. If further relief should be needed, resort should be had to that forum.

IRWIN, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD and HODGES, JJ., concur.

JACKSON, C. J., and BERRY and LAVENDER, JJ., dissent.