The DIRECTOR OF REVENUE, James R. Spradling, successor in office to James E. Schaffner, Respondent,

v.

The STATE AUDITOR, John D. Ashcroft, successor in office to Christopher S. Bond, Appellant.

No. 58203.

Supreme Court of Missouri, Division No. 1.

July 22, 1974.

Leland B. Curtis, Gen. Counsel, Dept. of Revenue, Jefferson City, for respondent.

John C. Danforth, Atty. Gen., Charles A. Blackmar, Asst. Atty. Gen., Jefferson City, for appellant.

HIGGINS, Commissioner.

Appeal by State Auditor from adverse decision in action by Director of Revenue for declaratory judgment. The question is whether the Auditor, in performance of his constitutional duty to postaudit the Department of Revenue, is entitled to access to individuals' tax returns in custody of the Department of Revenue and which are protected by law from disclosure by the Department.

The question arose from this background:

On March 19, 1971, the then Auditor (now Governor), the Honorable Christopher S. Bond, began an audit of the Department of Revenue and, in particular, the Sales Tax Unit of the Department. On June 4, 1971, the Auditor wrote the then Director of Revenue, James E. Schaffner, and demanded access to individual sales, income, and intangible tax returns in custody of the Department. On June 25, 1971, Mr. Schaffner replied to Mr. Bond and stated he was prohibited by Sections 143.270, 144.120, and 146.090, RSMo 1969, V.A.M.S., from divulging to the Auditor individual income, sales, and intangible tax returns in custody of the Department. Insofar as this record shows, there was no dispute with respect to inspection by the Auditor of any financial books, accounts, papers, or records of the Department. It is also represented by the Director and undisputed by the Auditor that the figures on the returns and their totals, as opposed to identification of taxpayer with return, were available to the Auditor.

The Auditor sought an opinion of the Attorney General and, on August 17, 1971, that officer gave his opinion that the Auditor had authority to inspect, without limitation, such returns in the conduct of an audit of the Department of Revenue. On August 25, 1971, the Director of Revenue wrote the Attorney General, stated his disagreement with the General's opinion, and requested the General to bring a declaratory judgment action to clarify the issues to protect all parties concerned. On August 27, 1971, the Attorney General wrote the Director and advised: that he declined to bring the declaratory judgment action; that the Director must provide the Auditor with access to the returns in the Department's custody, and that should he elect to disregard the opinion and thwart the Auditor in performance of his constitutional duties, he should be prepared to assume the legal consequences of his action.

On August 31, 1971, the Director of Revenue, to avoid possible adverse legal consequences and to clarify the law and his responsibility, brought this declaratory judgment action for a construction of Sections 143.270, 144.120, and 146.090, and a determination and declaration whether the Director of Revenue is required to permit the Auditor to inspect individual income, sales, and intangible tax returns in custody of the Department of Revenue in the course of an audit conducted by the Auditor.

On September 20, 1971, the Auditor filed his Answer and Counterclaim and prayed a declaration that the Auditor, in performance of his official duties, must be permitted access to tax returns in custody of the Department of Revenue, that the Director and his employees may not refuse access to such returns, and that the court enforce such declaration by injunction or otherwise. The Auditor stated these purposes for which access to the tax returns was necessary in conducting a postaudit of the Department of Revenue:

"a. To determine if the Department of Revenue and the Director of Revenue accurately account for tax collections. This determination may only be made by comparing tax liability shown on the tax returns with tax receipts reported collected

by the Department of Revenue and the Director of Revenue.

"b. To determine if the Director of Revenue is properly paying refunds. In this regard, it is necessary to examine tax returns since they contain information as to amounts of tax refunds claimed by taxpayers.

"c. To determine if the Department of Revenue and the Director of Revenue properly perform statutory duties with respect to collection of delinquent taxes. In this regard, it is necessary to determine from examination of tax returns if the Department of Revenue and the Director of Revenue have accurately identified both sources and amounts of tax delinquencies.

"d. To test internal audit procedures of the Department of Revenue to determine the appropriateness of the procedures, compliance by employees of the Department of Revenue with such procedures and the accuracy of these procedures."

The trial court found that the Constitution limits the Auditor to a postaudit of the Department of Revenue, and that the law did not authorize him to audit tax returns. The court then declared the Auditor is not authorized to have access to individual income, sales, and intangible tax returns in custody of the Department of Revenue, nor is the Director of Revenue or his department authorized to make any such returns available for the inspection and examination of any person not connected with his office.

Appellant Auditor contends the court erred in concluding that "post-audit" as used in Article IV, Section 13, V.A.M.S., of the Constitution limits the authority of the Auditor to examination of original documents, e. g., tax returns, in custody of the Department of Revenue in the course of an audit of that department; and in concluding that Sections 143.270, 144.120, and 146.090, RSMo 1969, V.A.M.S., preclude the Auditor from examination of original tax returns in custody of the Department of Revenue.

Appellant argues: that the term "post-audit" has no bearing on the question of the authority of the Auditor to examine tax returns in the custody of the Department of Revenue; that the duties of the Auditor are specified in Article IV, Section 13, of the Constitution, and that he necessarily has the authority to inspect any and all original records, including tax returns, in the Department of Revenue when exercising his authority with respect to that department; that the statutes in question do not justify the Director of Revenue in withholding access to tax returns in custody of the Department of Revenue and, if they do, they conflict with the Constitution.

Respondent Director of Revenue contends and argues: that the Auditor's duty is only to postaudit accounts of the Department of Revenue; that Sections 143.-270, 144.120, and 146.090, RSMo 1969, V.A.M.S., operate to prohibit access to any information in custody of the department other than that necessary to a postaudit of the accounts of that department; that such postaudit requires an examination of only the department's financial records and not tax returns in custody of the department; and that the confidentiality of tax returns intended by the statutes in question is consistent with the constitutional provision for postaudit of the Department of Revenue by the Auditor. Respondent, in urging the adoption of this position, characterizes it as "eminently fair, sensible and reasonable, and consistent with all Constitutional and statutory provisions involved."

A number of constitutional and statutory provisions and definitions are helpful in resolution of the question in this case.

Article IV, Section 13, Constitution of Missouri, provides: "The state auditor shall * * * post-audit the accounts of all state agencies * * *."

This constitutional provision has been incorporated in Section 29.200, RSMo 1969, V.A.M.S.: "The state auditor shall post-audit the accounts of all state agencies and

audit the treasury at least once annually. Once every two years, and when he deems it necessary, proper or expedient, the state auditor shall examine and post-audit the accounts of all appointive officers of the state and of institutions supported in whole or in part by the state * * *."

Section 29.130, RSMo 1969, V.A.M.S. provides: "The state auditor shall have free access to all offices of this state for the inspection of such books, accounts and papers as concern any of his duties."

Section 29.235, RSMo 1969, V.A.M.S., provides:

"1. All audits shall conform to recognized governmental auditing practices.

"2. The state auditor * * * may administer oaths and cause to be summoned * * * any person whose testimony is desired or necessary in any examination, and may require the person to produce necessary papers, documents and writings."

Section 33.030, RSMo 1969, provides that the comptroller shall: "(3) Preapprove all claims and accounts and certify them to the state treasurer for payment. As a prerequisite to his preapproval of all claims and accounts, the comptroller shall ascertain that the claims and accounts are regular and correct."

Section 136.140, RSMo 1969, V.A.M.S., provides: "The state collector of revenue [an appointee of the Director of Revenue approved by the Governor, Section 136.-020] shall maintain such accounting systems in his office as may be required to show receipts upon each kind or type of tax, license or fee which is collected by the division of collection. Such accounting systems maintained in the state collector of revenue's office shall be first approved by the director of revenue."

Section 143.270, RSMo 1969,[1] V.A.M.S., provides: "1. It shall be unlawful for any person, persons or officers to divulge, give out or impart to any other person, or persons, any information relative to, or the contents of any income tax return filed [in the Department of Revenue] * * *, or to permit any other person or persons not connected with his office to see, inspect or examine the same; but it shall be lawful for any person or officer to use any income tax return * * * for the purpose of assessing intangible personal property." Section 144.120, RSMo 1969, V.A.M.S., provides the same with respect to confidentiality of sales tax returns, and Section 146.090, RSMo 1969, V.A.M.S., provides similarly with respect to intangible tax returns.

Webster's Third New International Dictionary defines "postaudit": "an audit made subsequent to the final settlement of a transaction—contrasted with *preaudit*."

In the accounting profession, "postaudit" is defined: "An audit at some time after the occurrence of a transaction or group of transactions." See, e. g., A Dictionary for Accountants, by Eric L. Kohler, Fourth Edition, 1970.

The parties stipulated that "audit" means: "An examination of financial statements by an independent auditor in order that the auditor may present an opinion as to the fairness with which the financial statements present the financial position of the entity audited."

And from Governmental Accounting, Auditing, and Financial Reporting by the National Committee on Governmental Accounting, 1968:

"AUDIT. The examination of documents, records, reports, systems of internal control, accounting and financial procedures, and other evidence for one or more of the following purposes:

"(a) To ascertain whether the statements prepared from the accounts present fairly the financial position and the results

---

1. Effective January 1, 1973, provisions of this section are found in Section 143.976, Laws 1972.

of financial operations of the constituent funds and balanced account groups of the governmental unit in accordance with generally accepted accounting principles *applicable to governmental* units and on a basis consistent with that of the preceding year:

"(b) To determine the propriety, legality, and mathematical accuracy of a governmental unit's financial transactions;

"(c) To ascertain whether all financial transactions have been properly recorded; and

"(d) To ascertain the stewardship of public officials who handle and are responsible for the financial resources of a governmental unit."

"POST-AUDIT. An audit made after the transactions to be audited have taken place and have been recorded or have been approved for recording by designated officials if such approval is required."

"PRE-AUDIT. An examination for the purpose of determining the propriety of proposed financial transactions and financial transactions which have already taken place but which have not yet been recorded, or, if such approval is required, before the approval of the financial transactions by designated officials for recording."

Within the scope of the foregoing provisions of law, there can be no question that the Auditor has not only the authority, but the duty as well, to conduct a postaudit of the accounts of the Department of Revenue. Article IV, Section 13, Constitution of Missouri; § 29.200, supra.

■ Within the meanings ascribed to the terms in question by those in the auditing field, a postaudit of the accounts of the Department of Revenue requires no more of the Auditor than that he verify the financial picture of the Department of Revenue by examination after the fact, as contrasted with the preaudit duties of the comptroller, Section 33.030, supra, of the financial statements of the transactions in the department and present his opinion as to the fairness with which the financial statements present the financial position of the department. Kohler's Dictionary, Governmental Accounting, etc., and stipulation of definition of "audit," supra. It is not the business of the Auditor to judge the performance of the Department of Revenue, or to operate the department, or to determine who does or does not pay taxes, and the Department's internal accounting is the responsibility of the Collector of Revenue and the Director of Revenue. § 136.140, supra.

■ In conducting the postaudit of the Department of Revenue within the meaning of the foregoing definitions and provisions, the Auditor would need access to books, records, and accounts representative of financial information, none of which, including totals shown on the face of tax returns, was denied him by the Director of Revenue in this case. The totals shown on the face of the returns would enable the Auditor to determine, insofar as the duty to postaudit is concerned, the income of an undisclosed taxpayer, the amount of tax due, the amount remitted, refund if any, deficiency, and amount credited on the department books. Those matters, together with the matters shown by all other books, records, and accounts, would enable the Auditor to make proper postaudit of the Department of Revenue. The identity of the return by name and enterprise is not representative of any financial information, and none of the quoted purposes asserted by the Auditor in his pleading is shown to require a breach of the confidentiality statutes by disclosure of the identity of the taxpayer or the detail of his return other than its totals. Accordingly, access to taxpayers' returns is properly withheld from the Auditor as provided by law. §§ 143.270, 144.120, 146.090, supra.

■ Since the Auditor's constitutional and statutory duty and authority to postaudit the accounts of the Department of Revenue need not encompass identification of individual tax returns, there is no conflict

between the duty and authority provisions and Sections 143.270, 144.120, and 146.090, supra, which are intended to preserve the privacy of taxpayers and their affairs by prohibiting disclosure of such returns. All such provisions are thus free of conflict and are consistent with the scheme intended by the Constitutional Convention with respect to the Office of State Auditor. Constitutional Debates, Volumes XIII and XIV, pp. 4005–4007, 4222–4225, 4425–4455.

Judgment affirmed.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the Court.

All of the Judges concur.