POST OAK OIL COMPANY, a Domestic
Corporation, Petitioner,

v.

OKLAHOMA TAX COMMISSION,
Respondent.

Forrest ROZZELL, Petitioner,

v.

OKLAHOMA TAX COMMISSION,
Respondent.

Nos. 51662, 51669.

Supreme Court of Oklahoma.

Feb. 21, 1978.

John Joseph Snider, K. Nicholas Wilson,
Margaret M. Love, Fellers, Snider, Blanken-
ship & Bailey, Oklahoma City, for petition-
er, Post Oak Oil Co.

Marjorie Patmon, Gen. Counsel, Clyde E.
Fosdyke, Joe Mark ElKouri, Ann McNeil

Threlkeld, Oklahoma Tax Commission, Oklahoma City, for respondent.

Gene Stipe, Stephen H. Buzin, Stipe, Gossett, Stipe & Harper, Oklahoma City, for petitioner, Forrest Rozzell.

Curtis M. Long, Tulsa, for Gene C. Howard, President pro tem. of Oklahoma State Senate, amicus curiae.

LAVENDER, Vice Chief Justice.

For the purpose of this opinion, the two original actions are consolidated since the constitutionality of the same levied tax is involved, the conservation excise tax. 68 O.S.Supp.1977, §§ 1107 et seq.[1]

Petitioner, Post Oak Oil Company (Post Oak), is an Oklahoma corporation that pro-

1. The conservation excise tax act was passed by the House of Representatives May 18, 1977, and the Senate May 25, 1977, and became law with the signing of the Governor, May 26, 1977. The effective date of the act is January 1, 1978. It is codified as 68 O.S.Supp.1977, §§ 1107 et seq. and is as follows:

§ 1107. Legislative intent.—It is hereby declared the intent of the Legislature to levy a conservation tax on the severance of natural gas and/or casinghead gas to be used for the following purposes:

1. To provide funds for energy conservation or energy research programs for Oklahoma;

2. To provide funds for unfunded liabilities of public retirement systems; and

3. To provide funds for the general government of the State of Oklahoma.

§ 1108. Conservation excise tax.—A. There is hereby levied on all natural gas and/or casinghead gas produced and saved (excluding non-taxable royalty) a conservation excise tax of seven cents ($0.07) per thousand cubic feet (MCF), less seven percent (7%) of the gross value of each such MCF of natural gas and/or casinghead gas; provided that the conservation excise tax hereby levied shall not exceed one-third (⅓) of the gross value of each such MCF of the natural gas and/or casinghead gas so produced and saved. Provided further, the conservation excise tax herein levied shall never be less than zero.

B. For the purposes of this section, natural gas and/or casinghead gas, when produced and utilized in any manner, shall be considered as the amount of gas produced and saved, except gas which is:

1. Injected into a formation for the purpose of recycling, repressuring or pressure maintenance or for any other purpose which enhances the ultimate recovery of oil or other hydrocarbons;

2. Lawfully vented or flared;

3. Used in a gas-lift operation or field operations;

4. Used in the operation of compression facilities or of gasoline or recycling plants; or

5. Attributable to the shrinkage volume for the extraction of liquid hydrocarbons.

C. The purchaser of the natural gas and/or casinghead gas shall remit that portion of the tax for which the producer and/or the royalty owner is reimbursed by the purchaser. The producer and/or royalty owner shall remit that portion of the tax for which he is not reimbursed by the purchaser. The tax levied by this section shall be due at the end of any month in which the accrued total due from the remitter reaches One Hundred Thousand Dollars ($100,000.00); however, the tax due shall not be required to be remitted more frequently than once per calendar month. The tax will be considered delinquent forty-five (45) days after it becomes due. A remitter whose total tax due fails to reach One Hundred Thousand Dollars ($100,000.00) during any calendar year shall remit the taxes accrued for that year by February 1 of the year following accrual.

D. In addition to any other data sent monthly to a producer and%or the royalty owner, the purchaser shall also furnish an accounting of the nonreimbursed conservation tax liability which is due and remittable by the producer and/or the royalty owner.

E. Any tax reimbursement received as a result of taxes levied under this section shall not be considered by the Oklahoma Tax Commission as part of the gross value for the computation of gross production taxes, petroleum excise taxes or the tax herein levied.

§ 1109. Reports—Forms—Rules and regulations.—The Oklahoma Tax Commission is authorized and empowered to prescribe and promulgate all necessary report forms, rules and regulations for the purpose of making and filing of all reports necessary for the enforcement of this act.

§ 1110. Liability for tax—Liens—Release from liability.—The tax herein levied shall attach to and is the liability of the working-interest and royalty-interest owners' interests in all natural gas and/or casinghead gas produced and saved in the State of Oklahoma. In addition, the tax herein levied shall, at all times, be and constitute a first and paramount lien against the producer's and/or royalty owner's property, both real and personal. Moreover, the provisions herein requiring the purchaser of the natural gas and/or casinghead gas to remit that portion of the tax for which the producer and/or royalty owner is reimbursed by the purchaser shall not release the producer and/or royalty owner from liability to pay the same, in all cases where such tax fails to be remitted by the purchaser.

§ 1111. Special Conservation Fund.—There is hereby created in the State Treasury a special fund to be designated the "Special Conser-

duces gas in Oklahoma. That gas is sold in both intrastate and interstate commerce. Petitioner, Forrest Rozzell (Rozzell) is a Little Rock, Arkansas, resident and consumer of gas produced in Oklahoma and repurchased by him from a purchaser buying in interstate commerce from Oklahoma gas producers. Respondent in each action is the Oklahoma Tax Commission, the state agency authorized to enforce the tax.

The attack on the constitutionality of the conservation excise tax comes under the federal constitution as an undue burden on interstate commerce. Petitioner, Post Oak, principally argues the formula for calculating the amount of the levied tax is discriminatory to interstate commerce. § 1108 A. Petitioner, Rozzell, principally argues discrimination when the tax is considered with credits for excise taxes levied by the state on produced minerals, including gas, al-lowed against any Oklahoma state income tax. 68 O.S.Supp.1977, § 2357 D.[2]

Tax Commission contends the tax to be on the local state act of severance or production of gas without regard to sale in intrastate or interstate commerce that occurs after severance and after the levying of the tax. Commission says any income tax credit goes *to all* producers[3] of Oklahoma gas, but to them only. Of necessity, these producers have Oklahoma state income and earn credit against that income tax, coming from actual payment of the conservation excise tax, without regard to producer's residence, within or without of this state. It sees no discrimination in the tax.

First, we examine the jurisdiction of this court over the controversy, here. All parties agree on the jurisdiction of this court and urge this court to exercise its discretion in assuming original jurisdiction.

vation Fund" in which ten percent (10%) of the receipts received by the Oklahoma Tax Commission from the tax levied by this act shall be credited monthly. No money on deposit with the State Treasurer to the credit of the Special Conservation Fund shall be expended except pursuant to legislative appropriation.

The remaining ninety percent (90%) of the monthly receipts received from the conservation excise tax levied by this act shall be credited monthly by the State Treasurer to the Oklahoma Public Employees' Retirement Fund.

2. 68 O.S.1971, § 2357 relating to allowable credits under the Oklahoma income tax law, was amended by the laws, 1977. The amendment passed the House of Representatives May 3, 1977, and the Senate May 5, 1977, and became law with the signing of the Governor on May 9, 1977. The act is separate from the conservation excise tax act. Under a new subsection D, it allows tax credit on Oklahoma income tax for excise taxes under certain conditions. 68 O.S.Supp.1977, § 2357 D provides as follows:

D.1. There shall be allowed as a credit against the tax imposed by Section 2355 of this title the excise taxes levied by the State of Oklahoma on asphalt, ores bearing lead, zinc, jack, gold, silver, copper, petroleum or other crude oil or other mineral, oil, natural gas and/or casinghead gas or coal where the combined total of such taxes amounts to more than seven and eighty-five one-thousandths percent (7.085%) of the gross value of production of the mineral, oil, gas or coal produced, as follows:

a. If, under the terms of a contract between a producer and his purchaser which has continued in force since December 31, 1976, the excise taxes in excess of seven and eighty-five one-thousandths percent (7.085%) are not reimbursed to a taxpayer, then that unreimbursed portion of the excise taxes in excess of seven and eighty-five one-thousandths percent (7.085%) shall be allowed as a direct credit against income taxes owed by the taxpayer to the State of Oklahoma.

b. If the taxpayer elects to take the tax credit, the credit shall not be limited to the tax liability under Section 2355 of this title. If the tax credit exceeds the liability, the taxpayer may apply for a refund.

2. Any excise taxes for which the taxpayer is actually reimbursed shall not be included as a credit against the tax imposed by Section 2355 of this title, regardless of the contract provisions.

3. No excise taxes paid by a taxpayer, whether reimbursed or not under the terms of contracts entered into or renegotiated, as to tax-reimbursement provisions, after December 31, 1976, shall be allowed as a credit against the Oklahoma income tax under Section 2355 of this title by the taxpayer.

3. The term "producer" as used in this opinion includes both the owner of the working interest and the owner of the royalty interest in the produced gas.

Involved is the collection by a state commission of a conservation excise tax relating to a valuable natural resource of this state. The additional new revenue to the state from the yield of the conservation excise tax is approximated as some forty million dollars during 1978. This court has general superintending control over commissions of this state created by law. Okl.Const. Art. 7, § 4. This includes the Tax Commission. We conclude the effect of the newly generated tax on the production of gas, a natural resource of this state, and the effect on the fiscal affairs of this state's government make the validity of the called-into-question tax a matter of general public importance. We follow the rationale of *Wiseman v. Boren*, Okl., 545 P.2d 753 (1976) and court syllabus of *State v. Mathews*, 134 Okl. 288, 273 P. 352 (1928). That syllabus said:

> "Where the constitutionality of an act is questioned and is of such general public importance that there is a general public need for a speedy determination of its constitutionality, this court, in its discretion, will assume original jurisdiction of the question of its constitutionality. * * *."

We assume original jurisdiction of the question of the constitutionality of the conservation excise tax.

An abstract of the conservation excise taxing statute shows:

The legislative intent is to levy the tax on the act of severance, § 1107;

The levy is on all[4] natural gas and/or casinghead gas produced including both working interest and royalty interest, §§ 1108, 1110;

Liability for the tax attaches only to the producers and made a first lien on their property, both real and personal, § 1110;

If a producer is reimbursed by his purchaser for the tax, then remittance of the tax by the purchaser is to the commission and not the producer, § 1108 C;

Requiring the purchaser to remit that portion of tax the producer is reimbursed by the purchaser does not release the producer from tax liability, if the purchaser fails to remit, § 1110; and

The amount of tax is calculated as seven cents on each thousand cubic feet (MCF) of produced gas less seven percent of the gross value of that MCF of produced gas with the levied tax not to exceed one-third of the gross value of that MCF of produced gas, nor shall the levied tax be less than zero. § 1108 A.

■ Under the calculating formula, the seven cents is offset when the gross value of the MCF of produced gas reaches one dollar and the limitation as to one-third of the gross value comes into play when the gross value of the MCF of produced gas is seventeen and one-half cents. The levied tax operates on the production of gas having a gross value per MCF between one dollar and seventeen and one-half cents with the amount of tax increasing as the value of produced tax decreases. Post Oak argues a two tier pricing system of unregulated gas prices in intrastate selling and federally regulated lower gas prices in interstate selling places more tax and a greater burden on gas entering interstate commerce.

We have given close judicial scrutiny of the levied tax. The excise tax is on the act of severance, and the production, of an Oklahoma natural resource. Severance can occur only once and in this state. The levy is prior to entrance of any gas into interstate commerce and is on *all* gas so severed and produced without regard to subsequent entrance into either intra or interstate commerce.

A tax of similar nature was found constitutional in *Oliver Iron Mining Co. v. Lord*, 262 U.S. 172, 43 S.Ct. 526, 67 L.Ed. 929 (1923). This involved an occupational tax, or excise tax, levied by the state on iron ore mined in Minnesota. The United States Supreme Court found the extraction to be a local business subject to local tax even though most of the ore was subsequently shipped in interstate commerce with practi-

---

4. In § 1108 B. there is certain excluded gas, being that gas generally used in the production process itself. That exclusion is not material to this opinion.

cally no break in the continuity from severance until the beginning of interstate commerce. There, the tax was computed on the value of the ore when brought to the surface. Amount of royalty, which might vary by the mining contract or lease, was allowed to be deducted to arrive at the taxable value. The decision refused to find an undue burden on interstate commerce, for the effect of the tax was indirect. Nor was the tax stricken for some production, due to variance in the royalty amount, might carry a higher tax load through entering interstate commerce.

In the present case, the tax is upon the local act of severance. The tax amount is computed evenly on each MCF of severed gas less a percentage of the gross value at the surface or "wellhead" with the tax commencing at a gross value of one dollar for each MCF of gas and the amount of tax increasing with the decreasing of the gross value of each MCF of gas until seventeen and one-half cents is reached. This calculation is uniform without reference to sale in intrastate or interstate commerce. If there is an effect on produced gas entering on interstate commerce, that effect is incidental. The state taxing statute makes no distinction between gas entering intrastate and interstate commerce. Under *Oliver Iron Mining Co., supra,* the taxing statute here is not unconstitutional as placing an undue and discriminatory burden on interstate commerce.

Although argued as applicable in present case, we do not believe *Boston Stock Exch. v. State Tax Com'n,* 429 U.S. 318, 97 S.Ct. 599, 50 L.Ed.2d 514 (1977) is controlling. There, the taxing statute gave a direct advantage by a reduction of the stock transfer tax by 50%, if the transaction involved an in-state sale by a nonresident. There was no similar benefit on a taxable transaction by residents (regardless of where the sale was made) and by nonresidents selling outside the state.

The tax here questioned does not by its terms give a greater commercial advantage to users of gas sold within this state than is accorded users or purchasers of gas outside of Oklahoma. There is no intent to create such a discriminatory situation nor, in fact, does it appear that such a discrimination may occur. Intrastate as well as interstate purchasers are affected alike by the terms of the act. Even if it could be demonstrated that a larger part of the gas affected by this act eventually passes in interstate commerce, we do not believe that the act therefore is unconstitutional. The New York act involved in the *Boston Stock Exchange* case, supra, is clearly distinguishable.

On the argument leveled at the credit given on Oklahoma state income tax for the unreimbursed, and actually paid, portion of the excise tax,[5] we find the term "taxpayer" to be unclear and ambiguous in its meaning or understanding. Tax Commission argues the credit is limited and can be claimed only by the taxpayer made liable for the conservation excise tax. This would include only the owners of the working interest and of the royalty interest (producers). If the term "taxpayer" included any Oklahoma income taxpayers, then a non-resident interstate purchaser for resale with Oklahoma income could receive income tax credit, and reimbursement for the conservation excise tax, as opposed to a non-resident interstate purchaser for resale with no Oklahoma income, who could not receive income tax credit and reimbursement for the conservation excise tax. If applicable to a consumer, this same discriminatory aspect would be present, as argued by Rozzell, between a non-resident consumer, without Oklahoma income, and a resident consumer, with Oklahoma income.

We adopt the Tax Commission's interpretation and hold only the owners of the working interest or royalty interest may receive credit for the actual payment by them of the conservation excise tax and for which these owners are not reimbursed by purchasers for resale or through any kind of a "pass through" to a consumer. All producers (owners of the working interest and of the royalty interest) of Oklahoma

5. 68 O.S.Supp.1977, § 2357 D. See n. 2, supra.

gas must of necessity have Oklahoma state income. A purchase for resale or a consumer, as such, receives no credit or refund under 68 O.S.Supp.1977, § 2357 D. There can be no discrimination as to a purchaser for resale or a consumer. That status does not qualify one as a taxpayer that is allowed an income tax credit or refund. Statutes should be construed whenever possible so as to uphold their constitutionality. *United States v. Vuitch*, 402 U.S. 62, 91 S.Ct. 1294, 28 L.Ed.2d 601 (1971); *Shell Pipe Line Co. v. Robinson*, 66 F.2d 861 (10th Cir. 1933). Under the construction, here, § 2357 D does not discriminate and is constitutional.

Petitioners contend this conservation excise tax to be a state effort to indirectly regulate the price of gas moving into interstate commerce contra to the Federal Natural Gas Act of 1938, 15 U.S.C. § 717 d, with its supremacy, and the authority of the Federal Power Commission. Statements of General Policy and Interpretation under the Natural Gas Act, 18 C.F.R. § 2.56a excludes from the base national rates all State or Federal production, severance or similar taxes. Even though the tax could have an effect on the price of gas purchased for resale in interstate commerce, these general policies recognize as valid state taxes of the nature involved here. The conservation excise tax in present case is not in conflict with the Natural Gas Act, its supremacy, or the authority of the Federal Power Commission. The effect of the tax on the gas price is allowed and does not constitute an indirect regulation of the price of gas moving into interstate commerce.

Having assumed original jurisdiction, we hold the conservation excise tax, 68 O.S. Supp.1977, § 1107 et seq., levied on all natural gas and/or casinghead gas produced with the tax liability placed on the working-interest and royalty-interest owners, and the corresponding credit allowed only to these same owners on state income tax, 68 O.S.Supp.1977, § 2357 D, to be valid and constitutional, for there is no undue burden on interstate commerce nor discrimination between indirect owners of working interest and royalty interest as opposed to non-

resident owners of working interest and royalty interest in Oklahoma.

JURISDICTION ASSUMED AND WRIT OF PROHIBITION DENIED.

HODGES, C. J. and DAVISON, WILLIAMS, IRWIN, BERRY, BARNES and ROMANG, JJ., concur.

SIMMS, J., concurs in part and dissents in part.

DOOLIN, J., certified his disqualification. The Honorable Richard E. Romang was appointed in his stead.