STATE of Oklahoma ex rel. OKLAHOMA TAX COMMISSION, Petitioner.

v.

Tom DAXON, State Auditor and Inspector, Respondent.

No. 54138.

Supreme Court of Oklahoma.

Feb. 26, 1980.

Marjorie Patmon, Donna Cox, Oklahoma City, for petitioner.

Don McCombs, Jr., Oklahoma City, for respondent.

HARGRAVE, Justice.

On August 24, 1979, the Attorney General of the State of Oklahoma issued Opinion No. 79–251 in response to a query posed him by Tom Daxon, the State Auditor and Inspector. As the Attorney General rephrased the query it is:

Does the State Auditor and Inspector have the authority to examine the records and files deemed by the Oklahoma Tax Commission to be confidential and privileged?

The opinion of the Attorney General begins with 1979 Okl. Session Laws, Ch. 30 § 138,[1] amending 74 O.S.1971 § 212 as it provides in part:

"The State Auditor and Inspector . . shall examine the books and accounts of the state officers whose duty it is to collect, disburse or manage funds of the State, at least once each year."

Next the opinion notes that 1979 Okl. Sess.Laws, Ch. 30 § 114[2] specifically authorizes the State Auditor and Inspector to audit the accounts of the Oklahoma Tax Commission:

"The State Auditor and Inspector is hereby authorized and directed to make a continuous examination and audit of the books and accounts of the Tax Commission, making separate reports for each fiscal year ending June 30."

The next following section; the 1979 Okl. Sess.Laws, Ch. 30 § 115[3] provides for confidentiality and exceptions thereto of the records and files of the Tax Commission. Material excerpts from that statute are:

"(a) The records and files of the Tax Commission concerning the administration of this article, or any state tax law, shall be considered confidential and privileged, except as provided otherwise by law and neither the Tax Commission nor any employee engaged in the administration thereof or charged with the custody of any such records or files, nor any person who may have secured information therefrom, shall divulge or disclose any information obtained from said records or files or from any examination or inspection of the premises or property of any . person.

"(b) Neither the Tax Commission nor . any employee . . . shall be required . . . to produce any of them for the inspection of any person . . . Nothing herein contained shall be construed to prevent:

(1) The delivery to a taxpayer . . . ;

(2) The publication of statistics . . ;

(3) The examination of such records and files by the State Auditor and Inspector, or his duly authorized agents;"

The Attorney General's opinion notes that the statute providing for the confidentiality of the Tax Commission's records also expressly provides that the confidentiality so created shall not be construed to prevent examination of these records by the State Auditor and Inspector in addition to the proviso in (a) that these records are confi-

1. Now codified as: 74 O.S.Supp.1979 § 212.

2. Now codified as 68 O.S.Supp.1979 § 106.

3. Now codified as 68 O.S.Supp.1979 § 205.

dential except as otherwise provided by law.

In closing, the opinion notes that under (c) of the same section the criminal penalties therein provided for unauthorized disclosure of information obtained from these records apply to all persons securing information from the records and files of the Commission.

Thirteen days after the issuance of this Attorney General's Opinion the State of Oklahoma Ex Rel The Oklahoma Tax Commission filed an Application to Assume Original Jurisdiction, Petition for a Writ of Prohibition, and a Motion to Stay the Effectiveness of Attorney General's Opinion # 79-251. The application and petition allege this Court has superintending control over the Tax Commission and the State Auditor.[4] The application and petition allege the issue presented by Attorney General's Opinion # 79-251 is *publici juris*, affecting all taxpayers, the applicant and its employees, and is also of urgent public concern. The applicant Tax Commission admits it is required to comply with the mandate of the Attorney General until overruled in a court of competent jurisdiction.[5] The Commission alleges that enforcement of the Oklahoma Tax Code, 68 O.S. § 2351, et seq. is dependent upon a reciprocal agreement between it and the United States Internal Revenue Service and that the applicant has agreed with the Service to maintain the confidentiality of the information obtained therefrom. The applicant also alleges the disclosure would amount to a breach of the State's compact to its taxpayers that the returns will be kept confidential.[6]

The State Auditor and Inspector alleges in his response to the application to assume original jurisdiction and petition for a writ of prohibition that 68 O.S.1971 § 106 as amended by 68 O.S.Supp.1979 § 106 requires the office of State Auditor and In-

spector to perform a continuous audit of the State Tax Commission and that a preliminary audit of the Tax Commission has "shown that there are serious flaws in the internal controls of the Oklahoma Tax Commission which could potentially have an adverse effect upon the collection and apportionment of taxes." The Auditor concedes that he and his agents are subject to criminal penalties (as above noted) for violation of the privilege. He states the only intended purpose of his examination of these records is to audit the Tax Commission and correcting, if need be, the "conduct of the tax collectors." Additionally, the Auditor and Inspector alleges the Commission does not have standing to raise the privilege accorded to taxpayers inasmuch as the privilege is designed only to protect the taxpayer and not the tax collector.

■ Under the facts as set forth above, this Court concludes a justiciable controversy exists and the issues concern the citizens of the state and the performance of public duties charged by law to each of the state agencies above named. The controversy, in our determination, is a sufficiently broad public concern that this court has chosen to exercise its discretionary power to assume original jurisdiction in this *publici juris* cause. *Oklahoma Association of Municipal Attorneys v. State of Oklahoma*, 577 P.2d 1310 (Okl.1978), *Wiseman v. Boren*, 545 P.2d 753 (Okl.1976).

The Oklahoma Tax Commission asserts that 68 O.S.1971 § 106 was not changed insofar as it specifies the duties to be performed by the office, but the title of the State Examiner and Inspector was changed to the State Auditor and Inspector by 68 O.S.Supp.1979 § 106. In view of the fact that 68 O.S.1971 §§ 106 and 205 have remained substantially the same since the enactment of the State Tax Uniform Procedure Act in 1937, the long continued con-

---

4. Constitution of Oklahoma Article VII, § 4; *Post Oak Oil Co. v. Oklahoma Tax Commission*, 575 P.2d 964 (Okl.1978); *Winters v. Governor's Special Committee*, 441 P.2d 370 (Okl. 1967).

5. *Pan American Petroleum Corp. v. Board of Tax-Roll Corrections*, 510 P.2d 680 (Okl.1973).

6. *Oklahoma Tax Commission v. Clendinning*, 193 Okl. 271, 143 P.2d 143 (1943).

struction of these statutory provisions by the department of government charged with their execution should not be overturned without urgent reason.[7] Additionally, the Commission contends the long period of administrative construction of these statutes as establishing these records to be confidential is to be regarded as legislative acquiescence to such construction in the face of legislative silence. It is the Tax Commission's position that the Examiner's request is beyond the pale of his statutory duties as historically interpreted, and the amended statutes do not change the accepted construction of those duties.

The statutes do provide that the Auditor and Inspector is authorized and directed to "make a continuous examination and audit of the books and accounts of the Tax Commission." 68 O.S.Supp.1979 § 106. Title 74 O.S.Supp.1979 § 212 also provides that the Auditor "shall examine the books and accounts of the state officers whose duty it is to collect . . . funds of the state . . .". It is also provided in 74 O.S. Supp.1979 § 215, the title of which Section is: "Facilities for investigations—Exhibits and information—Offenses—Powers and duties of State Auditor and Inspector" that "All officers of the State . . . must make written exhibits to the Auditor . . under oath in such form . . . as he may prescribe . . .. The State Auditor and Inspector shall have full power and authority for the various purposes named to examine books, papers, accounts, bills, vouchers, and any other documents, or property of any or all of the aforesaid institutions, all State officers . . .". This section additionally makes misrepresentation and failure to produce the requested information a crime. Additionally, as previously noted, 68 O.S.Supp.1979 § 205(b)(3) excepts the records and files of the Commission from the privilege and confidentiality conferred by that same statute. It is therefore apparent that in no less than four separate statutes enacted in the 1979 Okl. Session Laws is it provided that the Auditor and Inspector shall have the power to ex-

amine the documents held by the Tax Commission.

The Tax Commission's argument that the Auditor is limited to acquiring information found in the "books and accounts of the Tax Commission" as specified in 68 O.S. Supp.1979 § 106 or the "records and files of the Tax Commission," specified in 68 O.S. Supp.1979 § 205, is based upon two premises; one, that a taxpayer's return is not part of the books and records referred to, and two, that the privilege found in 68 O.S. Supp.1979 § 205 extends to all remaining classes of documents. While the first assumption is at least dubious, the second is expressly negated by the only substantive change made in subsection (a) of 68 O.S. 1971 § 205 by 1976 Okl.Sess.Laws, Ch. 123 § 1. That change is the addition of the following emphasized language:

> "(a) The records and files of the Tax Commission concerning the administration of this article, or of any state tax law, shall be considered confidential and privileged, *except as provided otherwise by law* . . .."

■ We hold the effect of this proviso is to mandate that the prohibition against disclosure made by 68 O.S.Supp.1979 § 205 does not operate to restrict the classes of information the Auditor and Inspector may obtain under the broader provisions of 74 O.S.Supp.1979 § 215. To hold otherwise would render the referenced amendment mere surplusage, and to do so would violate the principle that a statute should be construed if possible so that every word, phrase, clause and sentence are operative rather than a construction which renders some words or phrases idle and nugatory. *Independent School District # 1 of Tulsa County v. Albus*, 572 P.2d 554 (Okl.1977); *Street v. Bethany Firemen's Relief and Pension Fund Board*, 555 P.2d 1295 (Okl. 1976); *General Motors Corp., Argonaut Division v. Cook*, 528 P.2d 1110 (Okl.1974); *C. H. Leavell & Company v. Oklahoma Tax Commission*, 450 P.2d 211 (Okl.1968).

---

7. *D. L. Peterson v. Oklahoma Tax Commission*, 395 P.2d 388 (Okl.1964).

The legislature has mandated that the State Auditor conduct a continuous audit of the State Tax Commission. Our examination of the statutory duties placed upon the State Auditor and Inspector leads us to conclude that the continuous audit provision of 68 O.S.Supp.1979 § 106 legislatively mandates the Auditor to scrutinize the activities of the Tax Commission in detail. The phrase "except as otherwise provided by law", added to the statutory grant of privileged and confidential status of the records of the Commission removes any doubt that the Auditor has the power under 74 O.S. Supp.1979 § 215 to "examine books, papers, accounts, bills, vouchers, and any other documents, or property of any or all of the aforesaid State institutions."

The Tax Commission cautions us that divulgence of certain information in its hands may, or possibly could, result in revocation of certain information sharing privileges which have the effect of considerably minimizing the trouble and expense of collecting and verifying the amount due in certain state taxes. Thus the Tax Commission states the Attorney General's opinion 79–251 was issued without regard to the law (26 U.S.C. § 6103) and the reciprocal agreement between the Oklahoma Tax Commission and the Internal Revenue Service.

█ It is plain under the provisions of the Oklahoma Constitution, Article 5 § 36 that: "The authority of the Legislature shall extend to *all* rightful subjects of legislation and any specific grant of authority in this Constitution, upon any subject whatsoever, shall not work a restriction, limitation, or exclusion of such authority upon the same or any other subject or subjects whatsoever." In extending the power of the legislature to "all rightful subjects" the legislature of the state of Oklahoma is constitutionally vested with the power and authority to pass legislation on any subject not withheld by the Constitution of this State or the Federal Constitution. *Spearman v. Williams*, 415 P.2d 597 (Okl.1966); *Dobbs v. Board of County Commissioners of Okl. County*, 208 Okl. 514, 257 P.2d 802 (Okl.1953); *Wentz v. Thomas*, 159 Okl. 124, 15 P.2d 65 (1932). Given the restriction imposed only through the United States and Oklahoma Constitutions, the legislature is empowered to pass such legislation as it deems beneficial to the public weal. *State ex rel. Grand Jury of McCurtain County v. Pate*, 572 P.2d 226 (Okl.1977). Indeed there is a constitutionally mandated policy requiring the legislature of the State of Oklahoma to provide an efficient and effective audit of the revenue collecting arm of the state government found in Article 5 § 60 of the Oklahoma Constitution:

"The Legislature *shall* provide by law for the establishment and maintenance of an *efficient* system of checks and balances between the officers of the Executive Department and *all commissioners* and superintendents, and boards of control of State institutions, and *all* other officers entrusted with the collection, receipt, custody, or disbursement of the revenue or moneys of the State whatsoever." (E.A.)

█ To limit the State Auditor and Inspector's right to access to primary tax revenue documents as the Tax Commission urges would seriously hamper, if not forestall, the Auditor's ability to account for revenue received. Without the ability to determine what funds are coming into the state in the first instance from the primary documents containing that information, the Auditor and Inspector would have no means by which to account for all funds in the hands of the Commission. To so limit the access of the Auditor would at once amount to a usurpation of legislative power clearly given and of the mandate of the last-mentioned article of the State Constitution, and this Court will not so act. It appears, therefore, the State Auditor has full Legislative authority to audit the Tax Commission and in doing so may examine for audit purposes the "books, papers, accounts, bills, vouchers, and any other documents, or property" in the manner he chooses. Such a statement does not alter the fact that the only State agency authorized to administer the tax laws and collect taxes in this State is the Oklahoma Tax Commission. *The watchdog is not the master of the house.*

Inasmuch as this Court is Legislatively and Constitutionally constrained to hold the Auditor and Inspector entitled to inspect all documents in the hands of the Tax Commission, we note that an examination of 26 U.S.C. § 6103 enacted as 1976 Public Law 94–455 effective February 1, 1977, does not confirm the fears voiced by the Tax Commission. In pertinent part the Federal Statute provides:

6103. Confidentiality and disclosure of returns and return information.

(a) General rule—Returns and return information shall be confidential and except as authorized by this title . .

.   .   .   .   .   .

(2) no officer or employee of any State

.   .   .

.   .   .   .   .

shall disclose any returns or return information obtained by him in any manner in connection with his service as such an officer   .   .   .

.   .   .   .   .

(d) Disclosure to State tax officials.—Returns and return information . . shall be open to inspection by or disclosure to *any State agency*   .   .   . which is charged under the laws of such State with responsibility for the administration of State tax laws for the purpose of, and only to the extent necessary in, the administration of such laws   .   .   .

.   .   .   .   .

Any doubt that the State Auditor and Inspector is one of the parties entitled to inspect these documents is laid to rest when the provisions last quoted are viewed in the light of (b)(4)(A)(i) of § 6103.

(4) Tax administration.

The term "tax administration"—

(A) means—

(i) the administration, management, conduct, direction, *and supervision of the execution and application of the internal revenue laws or related statutes (or equivalent laws and statutes of a State)*   .   .   .   (E.A.)

Clearly the State Auditor and Inspector of the State of Oklahoma is charged with the duties of ascertaining that the State tax laws and statutes have been executed, and as such is authorized to inspect the documents in question. Secondly, § 6103(p)(8)(A) & (B) authorize the disclosure of the information in question where, as here, such disclosure is required by state law. It is to be remembered that as required by (A) this State has a law (68 O.S.Supp.1979 § 205(c)) protecting the confidentiality of these records which applies with equal force to all persons who have secured that information. The remaining provision of 26 U.S.C. § 6103 to be examined as noted above is § 6103(p)(8)(A) & (B), reading in part:

(a) State law requirements.—

(A) Safeguards.—Notwithstanding any other provision of this section, no return or return information shall be disclosed   .   .   .   to any officer or employee of any State which requires a taxpayer to attach to, or include in, any State tax return   .   .   .   information reflected on such Federal return, unless such State adopts provisions of law which protect the confidentiality of   .   .   .   the federal return information reflected on, such State tax return.

(B)   .   .   .   Nothing in Subparagraph (A) shall be construed to prohibit the disclosure by an officer   .   .   .   of any state of   .   .   .   any information on a federal return which is required to be   .   .   .   included in a state return to another officer or employee of such state if such disclosure is specifically authorized by state law.

█ It is to be seen that the disclosure the Tax Commission seeks to prohibit is authorized by federal law under (A) and (B) above inasmuch as violation of the confidentiality is a criminal offense as required under (A), and secondly, the disclosure of the information is specifically mandated under 74 O.S.Supp.1979 § 215: "   .   .   .

shall have full power . . . to examine books, papers, accounts, bills, vouchers and *any other documents* . . ." It is to be noted that under other provisions of the statute last mentioned failure to so produce those records when requested by the State Auditor and Examiner is also a criminal offense.

WRIT DENIED.

LAVENDER, C. J., and WILLIAMS, SIMMS and DOOLIN, JJ., concur.

IRWIN, V. C. J., and HODGES and BARNES, JJ., concur specially.

OPALA, J., dissents.

BARNES, Justice, specially concurring.

I concur in the opinion expressed by the majority opinion, but I believe that in addition to the question of whether or not the State Auditor and Inspector is permitted to examine the books and records of the Oklahoma Tax Commission, we are also confronted with a question regarding the type of audit which the Auditor and Inspector is permitted to conduct.

As the majority opinion notes, the Auditor and Inspector states that the intended purpose of his examination of the records is to audit the Tax Commission and correct, if need be, the "conduct of the tax collectors". I agree with Mr. Justice Opala that the audit authorized by our statutes was intended to permit the Auditor and Inspector to examine individual tax returns for the sole purpose of extracting therefrom the data necessary to verify the Commission's records of collections and payments. These items are:

(1) The amount of the tax declared by an individual taxpayer;

(2) The amount of the tax prepaid; and

(3) The amount of the tax remitted with the return, or the amount of refund claimed to be due.

Armed with this information, the Auditor may then determine whether the funds claimed due were correctly paid and collected and whether refunds claimed were properly handled. In short, I believe that the identity of the taxpayer is relevant to the Auditor's duty for the sole purpose of tying the necessary figures to a particular return. The Auditor's duties do not, however, permit him to examine a return to determine whether the form was properly filled out, or whether the deductions were legitimate, and the like. Those determinations are within the purview of the Commission, and not of the Auditor. The Auditor's examination of the return is for a limited purpose only, and I concur specially today in order to emphasize this point.

I am authorized to state that IRWIN, J., concurs with the views expressed herein.

HODGES, Justice, specially concurring.

In my opinion, the question presented is not the type of audit (performance or financial) required to be performed by the State Auditor and Inspector, nor does the majority opinion address this issue. Rather, the question presented is:

Does the State Auditor and Inspector have the authority to examine records and files deemed by the Oklahoma Tax Commission to be confidential and privileged?

The majority opinion answers this question in the affirmative. This is the extent and scope of the majority opinion to which I concur.

OPALA, Justice, dissenting:

In this original action the Oklahoma Tax Commission [Commission] seeks this court's order barring the State Auditor and Inspector [Auditor] from access to the tax returns. The court's opinion arms the Auditor with a *carte blanche* for an all-inclusive examination of the Commission's "records and files". *I cannot join in sanctioning this blanket invasion of taxpayers' privacy.*[1] At

1. The privilege-and-confidentiality regime for tax returns is created by the terms of 68 O.S. Supp.1979 § 205. In pertinent part this statute provides:

stake in this first-impression controversy—miscast here in the posture of a dispute between the Senate-backed Commission and an elected constitutional officer of the State—is this government's continued fidelity to the solemn "compact and pledge", made by the legislature in 1939, that taxpayers' returns shall stand protected from all eyes—public or private—which are without statutorily-recognized interest in their inspection.[2]

### I.

Both powers and duties of the Auditor *vis-á-vis* the Commission are purely statutory. The Constitution, Art. 6 § 19, assigns to him no broader task than that of examining the state and all county treasurers. All of his other responsibilities are prescribed by

the legislature. Statutes vary widely in defining the scope and depth of the audit to be conducted in the different agencies of government.[3]

The Commission is subject to a "continuous examination and audit" required by 68 O.S.Supp.1979 § 106.[4] The legislature annually appropriates for a postaudit of the Commission.[5] By § 106, supra, which deals specifically with the Commission, the subject of the Auditor's examination of the Commission is confined to "books and accounts". The same phrase is used in the more general provisions of 74 O.S.Supp.1979 § 212, while another general statute, 74 O.S.Supp.1979 § 215, seems to authorize the Auditor's examination "for the various purposes" of "books, papers, accounts, bills,

"(a) *The records and files of the Tax Commission* concerning the administration of this article, or of any state tax law, shall be considered confidential and privileged, *except as provided otherwise by law* and neither the Tax Commission nor any employee engaged in the administration thereof or charged with the custody of any such records or files, nor any person who may have secured information therefrom, shall divulge or disclose any information obtained from the said records or files or from any examination or inspection of the premises or property of any person.
(b) *Neither the Tax Commission nor any employee engaged in such administration or charged with the custody of any such records or files shall be required by any court of this state to produce any of them for the inspection of any person* or for use in any action or proceeding except when the records or files or the facts shown thereby are directly involved in an action or proceeding under the provisions of this article . . . Nothing herein contained shall be construed to prevent:
     *     *     *     *     *     *
  (2) *The publication of statistics so classified as to prevent the identification of a particular report and the items thereof;*
  (3) *The examination of such records and files by the State Auditor and Inspector, or his duly authorized agents;*
     *     *     *     *     *     *
(c) Any violation of the provisions of this section shall constitute a misdemeanor, and shall be punishable by a fine not exceeding One Thousand Dollars ($1,000.00), or by imprisonment in the county jail for a term not exceeding one (1) year, or by both such fine and imprisonment; and the offender shall be removed or dismissed from office. * * * " [Emphasis added].

2. Okl.Sess.L.1939, p. 369 § 6; 68 O.S.1941 § 1454; *Oklahoma Tax Commission v. Clendinning*, 193 Okl. 271, 143 P.2d 143, 146, 151 A.L.R. 1035 [1943].

3. The Auditor's responsibility *vis-á-vis* the different agencies may be found in 57 O.S.Supp. 1979 § 537(D) [Department of Corrections]; 64 O.S.Supp.1979 § 87c [Commissioners of Land Office]; 69 O.S.Supp.1979 § 315 [Commission and Department of Transportation]; 70 O.S. Supp.1979 § 5–127 [local school districts] and 74 O.S.Supp.1979 §§ 212, 215 [general provisions].

4. Continuous audit is defined as one "in which the detailed work is performed either continuously or at short, regular intervals throughout the fiscal period. Such continuous work leads up to the completion of the audit upon the closing of the accounting records at the end of the fiscal period." Governmental Accounting, Auditing and Financial Reporting, p. 157 [Municipal Finance Officers Association 1968].

5. Post-audit means "an audit made *after* the transactions to be audited have taken place and have been recorded or have been approved for recording by designated officials . . .". Governmental Accounting, etc., supra note 4, at p. 166; *Director of Revenue v. State Auditor*, 511 S.W.2d 779, 783 [Mo.1974].
   Most but not all of the recent annual appropriation acts, cited to us by the Commission, characterize the examination required to be made as a "post-audit". See 74 O.S.1971 § 285(44); 74 O.S.Supp.1973 § 285(44); Okl.Sess.L.1975, Ch. 247, § 5; 74 O.S.Supp.1978 § 285(44) and 74 O.S.Supp.1979 § 285(44).

vouchers and any other documents, or property". The expanded language of § 215, while appearing all-inclusive when read by itself, is obviously qualified, and hence limited, by its reference to authorized "purposes" for each agency's audit. It will hence not serve to enlarge the source of the Auditor's authority over the Commission nor does it speak to the scope and depth of the audit he is required to perform in the Commission's office. Equally unacceptable is the notion that the Auditor's powers came to be expanded by the 1976 addition to 68 O.S.Supp.1979 § 205(a) of the phrase "except as provided otherwise by law". This language, added by Okl.Sess.L.1976, Ch. 123, Sec. 1, to the provisions of § 205(a), was an obvious reference to the second section of that act, now 63 O.S.Supp.1979 § 804.16. The last cited section created an entirely different privilege-and-confidentiality regime for the "annual registration, license or certificate of title of any vessel, motorboat or motor.[6] In short, § 205(a), as amended in 1976, will not do to give the Auditor powers greater than those derived by him from 68 O.S.Supp.1979 § 106—the section that defines the "various purposes" for the examination.

A general review of § 106, supra, considered singly and together with all the other statutory provisions defining the nature of the audit contemplated by the legislature for the various government offices, yields at least two elements common to the totality of the framework. These elements are significant in the search for an answer to the dispositive question here in suit. *First*, there is *no* statute which extends to the Auditor powers over office records equal to those conferred on him by Art. 6 § 19, Okl.Con., with respect to the state and county treasurers. Over the records of the treasurers, while they undergo his examination "without notice", the Auditor is given "complete possession". *Second*, none of the enactments authorizes the Auditor to run a performance audit as distinguished from an examination of the agency's financial accountability. Performance audit function is assigned in unmistakable terms exclusively to the Fiscal Services Division of the State Legislative Council.[7] Because that division is without power to examine confidential records, it is doubtful that it could itself impose on the Commission an audit to evaluate that agency's programmatic performance.

By long-continued administrative construction of the applicable law, uninterrupted since 1939, the Commission's financial accountability audit has not included an examination of tax returns. *I find no statutory warrant for the Auditor's claim to some legitimate, legislatively-recognized interest in the inspection of these returns for any purpose. The Commission, not the Auditor, is the undisputed final arbiter of a person's tax liability to the State. He can add absolutely nothing to it nor can he subtract anything from it. His comment on the validity of a tax assessment or a refund claim would be but an exercise in supererogation.*

Absent litigation, the Commission's review of a return constitutes the ultimate judgment upon the correctness of the computations contained in it, the deductions and exemptions claimed and the accounting methods used. The law simply leaves no room for a duplicate review by the Auditor—total or partial. It is not the business of the Auditor to judge the Commission's

---

**6.** The 1976 insertion of the quoted phrase "except as provided otherwise by law" may have been viewed as necessary when 68 O.S.Supp. 1976 § 205.1 was enacted in the same session. Okl.Sess.L.1976, Ch. 152, p. 214. The terms of § 205.1 created another exception to the regime of confidential "records and files" of the Commission.

**7.** 74 O.S.Supp.1979 § 452.4. Performance audit is defined in this section as "an examination of

the effectiveness of administration and *its efficiency and adequacy in terms of the program of a state agency, authorized by law to be performed*, and the conformance of expenditures, with legislative intent in the appropriation of funds." [Emphasis added]. The same definition was adopted in the State of Washington. *Matter of Washington State Bar Association*, 86 Wash.2d 624, 548 P.2d 310, 313 [1976].

performance in administering tax laws or to determine who does or does not pay taxes.[8]

## II.

Tax returns have been "privileged and confidential" since 1939 [9] and "secret" since 1943.[10] They are essentially treated as private documents in which the citizens may rightly assert an expectation of privacy. The Commission has exclusive authority to keep these documents in its custody.[11] While the provisions of 68 O.S.Supp.1979 § 205(b)(3) allow for an "examination of [the Commission's] . . . records and files by the" Auditor or his agents, that section cannot by itself *confer* powers on the Auditor nor can it enlarge the scope of the permissible audit. Properly construed in conjunction with other statutes *in pari materia*, § 205(b)(3) is not a grant or source of power but rather a license to inspect that material which is necessary to the performance of the legitimate auditing function. In short, the access to be accorded the Auditor under § 205(b)(3) must be function-related.

The Auditor's hope of establishing the necessary function *nexus* must rest on his claim that the information sought from the returns is absolutely essential to the proper performance of his statutorily-mandated financial accountability audit. This is the sum total of his legitimate, legislatively-authorized interest which can be made textually demonstrable. His claim to inspection of tax returns must hence be confined within the perimeter of that interest.[12]

The sole purpose for the auditor's examination is the preparation of an audit. The audit is not open-ended but statutorily limited in scope. Its report is by law made a public record.[13] The Legislature surely did not contemplate the Auditor's inclusion in that report of any information that would violate the carefully erected framework of taxpayer's privacy. What was doubtless intended to be published in the Auditor's report is carefully outlined in § 205(b)(2) as ". . . statistics so classified as to prevent the identification of a particular [taxpayer's] report and the items thereof." All this makes it abundantly clear that for the preparation of his audit report the Auditor need not have access to the identity of individual taxpayers nor to the detailed information in their returns. What he does not need, he has no legitimate interest in seeing. His visual periphery must be made coextensive with his legitimate interest.

## III.

For proper performance of his narrowly-defined function the Auditor does, however, need to abstract from individual returns the following data: (a) the amount of tax declared (b) the amount of tax prepaid from withholding or pursuant to the declared estimate of income and (c) the amount of tax remitted with the return or the amount of refund claimed to be due. The identity of the taxpayer is not relevant to the "purposes specifically provided by law." If at all possible to so arrange, access to identifying references should be withheld from the Auditor.[14] Under no circumstances should

8. Identical conclusion under a similar statutory framework was reached in *Director of Revenue v. State Auditor*, supra note 5, at p. 783.

9. 68 O.S.1941 § 1454; *Okl. Tax Commission v. Clendinning*, supra note 2.

10. 51 O.S.1971 § 24.

11. Not even the Archives and Record Commission may claim the custody of tax returns or remove them from the office of the Commission. 74 O.S.1971 § 572(b).

12. The privilege-and-confidentiality regime of § 205 does not belong to the officialdom of this government but rather to the taxpaying public.

It constitutes "the state's compact and pledge to the taxpayer that his tax return shall be kept inviolate, confidential and privileged, and *not disclosed to anyone*, nor in any manner, *except as specifically authorized by the act itself, and will be used only for the purposes specifically provided*" [emphasis added]. *Oklahoma Tax Commission v. Clendinning*, supra note 2.

13. 68 O.S.Supp.1979 § 106 provides that ". . . [the] report . . . of the State Auditor . . . [is] a public record."

14. Our conclusion here is consistent with that reached by the Supreme Court of Missouri construing a similar statutory framework. *Di-*

his personnel be allowed to copy into their worksheets any identification data. This measure appears essential to the preservation of the taxpayer's privacy. The statute confers on the Auditor *no legal warrant* for keeping any material abstracted by his personnel from the Commission's files from becoming a public record in their hands. The law contemplates *no* removal of the Commission's records either by copy or in an abstract form. The terms of § 205(b)(3) authorize no more than an Auditor's "examination" of "records and files" of the Commission. They give the Auditor *no* right of access to any information other than that which may be published under the authority of § 205(b)(2)—"the statistics so classified as to prevent the identification of a particular report and the items thereof." While under § 205(a) the Auditor's personnel may not "divulge or disclose", under the threat of criminal prosecution as provided in § 205(c), any information gleaned by them from the Commission's files, the confidential material in the Auditor's hands, whether in a copy or abstract form—on the worksheets or otherwise—is not privileged. It ceases being part of the "Commission's" records. It becomes public record by force and operation of general law. 51 O.S.1971 § 24 and 68 O.S.Supp.1979 § 205(b).

Even a cursory comparison of § 205(a) testimonial immunity provisions with the language in § 205(b) dealing with privilege from in-court production of records will readily reveal that the former have an application sweep vastly broader than the latter. The terms of § 205(b) *clearly restrict the privilege from production in court to documents in the hands of the "Tax Commission" or "any employee engaged in such [tax Law] administration or charged with the custody of such records or files."* In contrast with § 205(b), the confidentiality [nondisclosure requirement] and testimonial immunity provisions of § 205(a) clearly extend beyond the Commission and its employees. They unmistakably cover "any person who may have secured the information" from the Commission's "records and files."

In short, to sanction the Auditor's open-ended access to the returns would break down the carefully constructed privilege-and-confidentiality regime of § 205. It would transmute the taxpayer's secrets from "records and files" of the Commission into a public record and make his return no more confidential than any copy thereof reposed in private possession or in court records.[15]

The pledge made here by the Auditor that he will treat the Commission's records in his possession as confidential and is mindful of the criminal penalty for disclosure of the information contained in them affords us no solution to the legal problem we confront. The taxpayer who is privileged by § 205 privacy regime of our law has an absolute right to insist that his confidences not be shared with officialdom—high or petty—who are without legislatively-recognized interest in the information entrusted to the state in his return. This much has stood as an honored principle of our decisional law ever since § 205 first came under judicial examination in 1943.[16]

I would hence hold that from the returns of the taxpayers, whose anonymity must be protected so far as humanly possible, the Auditor may abstract no more than the three items deemed to be function-related

rector of Revenue v. State Auditor, supra note 5.

**15.** Once a person has made his/her income an issue in litigation, a copy of his/her tax return may become a legitimate subject of production in court, but its examination must be restricted to the relevant portions of the return. *Matchen v. McGahey*, Okl., 455 P.2d 52, 56 [1969]. *Application of Umbach*, Okl., 350 P.2d 299 [1960]. Court records are public under 51 O.S.1971 § 24.

**16.** *Oklahoma Tax Commission v. Clendinning*, supra note 2; The principle was reiterated some twenty years later in *Oklahoma Tax Commission v. McInnis*, Okl., 409 P.2d 355, 356 [1965]. The dissent of Justice Lavender, joined by Justice Davison, placed even a stronger emphasis upon the spirit of pronouncement in *Clendinning.* 409 P.2d at 359, 361. It is not without significance to note that Justice Davison concurred in *Clendinning.*

and essential to the beginning of a meaningful audit trail through the necessary document flow.

## CONCLUSION

### I.

The Auditor has no legitimate, legislatively-recognized interest in the tax returns.[17] His § 205(b)(3) access to the "records and files" of the Commission stands circumscribed by the outer perimeter of his power to audit. What he cannot audit, he cannot inspect. The Auditor's access under § 205(b)(3) should hence be limited to those "records and files" which are legitimately related to his function of conducting a financial accountability audit. While the returns must be withheld from the Auditor's reach, he should be allowed to abstract from them only three items which are to serve as the source for his audit trail through the Commission's document flow. Taxpayers' identity should be protected from disclosure to the Auditor to the fullest extent possible.

### II.

The court's decision today has added to the bureaucratic establishment at the Capitol yet another layer of permanent tax authority with unrestrained power to dictate to the Commission a brand new set of rules for a massive overhauling of accounting and other internal procedures by which revenue is to be computed, processed, adjusted and settled. The authority so sired by us will no doubt establish itself directly or obliquely as the final administrative arbiter of every taxpayer's liability. With its newly-gained responsibility the layer will grow beyond its present-day dimension. After making the initial splash on the government scene it will eventually accommodate itself to some comfortably symbiotic existence level. Our unwarranted fear of some adverse public sentiment to the 1939 confidentiality regime for the taxpayers makes us forget, all-too quickly, that the *sunshine* let in today may well turn into tomorrow's *sunburn*. If, as it was intimated to us at oral argument, the Commission stands suspected of inefficiency or malfeasance, a grand jury inquest[18] would be a far more appropriate device than turning the Auditor loose to conduct a massive extrastatutory performance audit with not even an iota of guidelines for the inquisition to safeguard the taxpayers' privacy interest.

Loath to disturb the long-continued administrative practice and finding no legislative authority to the contrary, I would confine the Auditor to a thorough financial accountability audit and leave up to a grand jury the inquest into the Commission's activities in administering the revenue laws.

---

**17.** In *Winters v. Governor's Special Committee,* Okl., 441 P.2d 370, 374, we said: "Freedoms protected against invasion by the First Amendment should not be placed in danger in the absence of a clear legislative determination that a need exists for, and state interest demands, a particular inquiry by an investigative organ of government. There is no power in either judicial, executive or legislative branch of the government 'to expose for the sake of exposure'. *Watkins v. United States,* 354 U.S.

178, 200, 205, 77 S.Ct. 1173, 1184, 1 L.Ed.2d 1273. *The lack of any indications in the statute itself that the legislature desired the information the committee seeks to elicit here concerning the treasurer's activities must be regarded as the absence of statutory authority to carry the inquiry into that area.*" [Emphasis added].

**18.** *Winters v. Governor's Special Committee,* supra note 17, at p. 377.