Dear Mrs. Kelly and Dr. Schafer:
Each of you has posed questions in regard to the authority of the Office of the State Auditor to receive access to records of the Department of Mental Health in an audit examination of the Department and its facilities. Because of the similarities in the questions posed, we have combined your requests into one opinion. The questions posed by State Auditor Kelly are as follows:
 An opinion is requested as to whether or not the Office of the State Auditor is entitled to receive access to the following records of the Department of Mental Health in its audit examination of the Department and its facilities:
1. Patient medical records;
 2. Physician peer review minutes or records where review of patient care was the subject of the meeting;
 3. Abuse and neglect investigation reports;
 4. Records relating to litigation pending against the Department;
 5. Records relating to potential litigation against the Department (for example, records of patient death cases).
The questions posed by Dr. Schafer are as follows:
 1. Does the State Auditor have the authority to engage in a performance audit of the Department of Mental Health, which audit would include review of Department records, the substance of which concern health care issues of clients and performance of staff rather than financial issues?
 2. If the State Auditor has the above authority to engage in performance auditing, does the State Auditor have a right of access to the personal medical files of patients of the Department of Mental Health? These records include physician and nursing notes, social histories of the patient, pharmacy records, progress notes by developmental or hospital attendants indicating firsthand observations of clients and professional staff summaries of client progress which include their recommendations for changes in the individual patient treatment plans.
 3. Does the State Auditor have a right of access to information which is protected by attorney-client privilege or work product privilege because the matter is in litigation, or to information which, if disclosed to the public, would compromise the litigation strategy of the state?
 If the State Auditor has a right of access to such documents, is that right to access affected where the State Auditor has refused to ensure that such information will not be publicly disclosed?
 4. Does the State Auditor have a right of access to the disciplinary files which result from the physician peer review process, which files are protected in section 537.035, RSMo?
 5. Does the State Auditor have a right of access to the abuse and neglect investigation reports protected from disclosures in section 630.167? If the Auditor has a right of access, is that access to the original document which contains names of informants and complainants, or is that access to summaries of the investigation reports which exclude personally identifiable information?
Article IV, Section 13 of the Missouri Constitution refers to the duties of the State Auditor. Such section provides:
 The state auditor shall have the same qualifications as the governor. He shall establish appropriate systems of accounting for all public officials of the state, postaudit the accounts of all state agencies and audit the treasury at least once annually. He shall make all other audits and investigations required by law, and shall make an annual report to the governor and general assembly. He shall establish appropriate systems of accounting for the political subdivisions of the state, supervise their budgeting systems, and audit their accounts as provided by law. No duty shall be imposed on him by law which is not related to the supervising and auditing of the receipt and expenditure of public funds.
Thus, under the above constitutional provision, and among her other duties, the State Auditor shall postaudit the accounts of all state agencies. In addition, she shall make all other audits and investigations required by law. In this regard, under the provisions of Section 29.200, RSMo 1986, the State Auditor has a duty to postaudit the accounts of the Department of Mental Health and its facilities. Section 29.130, RSMo 1986, provides in part that the State Auditor shall have free access to all offices of the state for the inspection of such books, accounts and papers "as concern any of his duties." Under Section 29.235, the State Auditor may require the production of"necessary papers, documents and writings." (Emphasis added.) Sections 29.070 and 29.080, RSMo 1986, provide in part that audit examiners may not reveal the condition of any office examined or any information received in the course of any examination of any office to anyone except the State Auditor.
The statutory provisions relating to the records of the Department of Mental Health are found in Chapter 630, RSMo 1986. In this regard, Section 630.080, RSMo 1986, relating to access to records in the Department of Mental Health by the State Auditor provides as follows:
 The state auditor shall have access to all records maintained and established by the department. Any confidential records shall not be divulged in such a way to reveal personally identifiable information.
(Emphasis added.)
There are also statutory provisions relating to patient medical records. In this regard, Section 630.140.1, RSMo 1986, provides as follows:
 1. Information and records compiled, obtained, prepared or maintained by the residential facility or day program operated, funded or licensed by the department or otherwise in the course of providing services to either voluntary or involuntary patients, residents or clients shall be confidential.
However, Section 630.140.3(4), RSMo 1986, provides that the facilities or services may disclose information and records under certain conditions which reads as follows:
 (4) To qualified personnel for the purpose of conducting scientific research, management audits, financial audits, program evaluations or similar studies;
provided, that such personnel shall not identify, directly or indirectly, any individual patient, resident or client in any report of such research, audit or evaluation, or otherwise disclose patient, resident or client identities in any manner;
(Emphasis added.)
There are also statutory provisions relating to patient death records. Section 630.145.1 and 2, RSMo 1986, provide as follows:
 1. Notwithstanding the provisions of section 630.140, a residential facility or day program operated, funded or licensed by the department may release to a patient's or resident's next of kin, attorney, guardian or conservator, if any, the information that the person is presently a patient, resident or client in the facility or program, or that the person is seriously physically ill, and shall notify a voluntary patient's or resident's next of kin, attorney, guardian, or conservator or any other person who may be responsible for the costs incurred by such patient or resident, of the admittance of such patient or resident.
 2. Upon the death of a patient or resident, the facility shall notify his next of kin, guardian or conservator, if any, about the death and its cause.
The statutory provisions relating to mistreatment of patients are found in Sections 630.155 through 630.168, RSMo 1986. Section 630.155.2, RSMo 1986, provides that patient, resident or client abuse or neglect is a class A misdemeanor. Section 630.160.2, RSMo 1986, provides that furnishing unfit food to patients, residents or clients is a class A misdemeanor. Section 630.165.1, RSMo 1986, provides in part that when various individuals have reasonable cause to believe that a patient, resident or client of a facility, program or service has been abused or neglected, he shall immediately report or cause a report to be made to the Department. Section 630.167, RSMo 1986, relates to investigations and investigation reports. In this connection, Section 630.167.3 and 4, RSMo 1986, provides as follows:
 3. Reports shall be confidential, shall not be deemed a public record, and shall not be subject to the provisions of section 109.180, RSMo, or chapter 610, RSMo; except that, all such reports shall be open to the parents or other guardian of the patient, resident, or client who is the subject of such report. The name of the complainant or any person mentioned in the reports shall not be disclosed unless such complainant or person specifically requests such disclosure or unless a judicial proceeding results therefrom.
 4. Anyone who makes a report pursuant to this section or who testifies in any administrative or judicial proceeding arising from the report shall be immune from any civil or criminal liability for making such a report or for testifying except for liability for perjury, unless such person acted in bad faith or with malicious purpose.
Section 630.168, RSMo 1986, provides in part that in situations of suspected patient or resident abuse which results in physical injury, the head of the facility or program shall, as specified in the Department's rules and regulations, notify local law enforcement authorities and cooperate fully with any investigation by them.
Performance Audit
One of the issues posed in the opinion request by Dr. Schafer is whether or not the State Auditor has the authority to engage in a performance audit of the Department of Mental Health, which audit would include review of Department records, the substance of which concern health care issues of clients and performances of staff rather than financial issues.
In the case of Director of Revenue v. State Auditor,511 S.W.2d 779 (Mo. 1974), the Missouri Supreme Court held in part that in conducting a postaudit of the Department of Revenue, the State Auditor who was furnished with totals, shown on faces of tax returns, did not need access to the identity of the taxpayers for purposes of his postaudit, and thus access to the taxpayers' sales, income, and intangible tax returns was properly withheld from the State Auditor pursuant to a statute providing for confidentiality of such returns, and such statutes do not conflict with the constitutional and statutory provisions governing the duty and authority of the State Auditor. In reaching its decision, the Court also made the comment at 511 S.W.2d 783 that it was not the business of the State Auditor to judge the performance of the Department of Revenue. Subsequently, in Attorney General Opinion No. 117, Keyes, 1977, a copy of which is enclosed, this office held that the State Auditor had access to information contained in individual personnel files maintained at the Department of Mental Health and its facilities even though parts of such files may be confidential to the extent that such files relate to the duty of the State Auditor to postaudit the financial condition of such institutions.
There are no relevant decisions subsequent to Director ofRevenue v. State Auditor, supra. Thus, the State Auditor has no power to do performance audits consistent with that judicial teaching.
With the foregoing in mind, we will now consider the issues relating to patient medical records, patient death records,
and abuse and neglect investigation reports.
 Patient Medical Records
It is our understanding that patient medical records include physician and nursing notes, social histories of the patient, pharmacy records, progress notes by developmental or hospital attendants indicating firsthand observations of clients, and professional staff summaries of client progress which include their recommendations for changes in the individual patient treatment plans. The presumption is made that the medical records do not include the records and files maintained in any court proceeding under Chapter 632, RSMo 1986.
In analyzing the foregoing statutory provisions, there are two provisions in Section 630.080, RSMo 1986. The first provision is that the State Auditor shall have access to all
records maintained and established by the Department. The second provision is that any confidential records shall not
be divulged in such a way to reveal personally identifiable information. In this regard, we must give to each provision some meaning and not presume that the Legislature intended the language in the second provision to be superfluous and meaningless.Bussmann Manufacturing Company v. Industrial Commission,Division of Employment Security, 335 S.W.2d 456, 460 (Mo.App. 1960). If in the first provision the State Auditor shall have access to all records, the second provision requires an interpretation that any confidential records provided to the State Auditor shall not be divulged by the State Auditor in such a way to reveal personally identifiable information. This interpretation is also consistent with the provisions of Section630.140, RSMo 1986, relating to the confidentiality of patient records of the Department of Mental Health. In this connection, Section 630.140.3(4), RSMo 1986, indicates that the facilities or services may disclose information and records to qualified personnel for the purpose of conducting management audits,financial audits, program evaluations or similar studies; provided that such personnel shall not identify, directly or indirectly, any individual patient, resident or client in any report of such research, audit or evaluation, or otherwise disclose patient, resident or client identities in any manner. The rules of statutory construction require that statutes relating to the same subject are to be considered together and harmonized if possible so as to give meaning to all provisions of each. State ex rel. Lebeau v. Kelly, 697 S.W.2d 312
(Mo.App. 1985). Therefore, when the provisions of Section630.140.3(4), RSMo 1986, are harmonized with the provisions of Section 630.080, RSMo 1986, the statutory language of each statute operates as a prohibition upon the divulgence of personally identifiable information by the State Auditor and not upon the Department of Mental Health.
There is, however, an exception to the conclusion that patient records must be made available to the State Auditor. The Department maintains drug and alcohol abuse records to which are applicable the confidentiality provisions of Section 408 of Pub.L. 92-255, the Drug Abuse Office and Treatment Act of 1972 (21 U.S.C. § 1175) as amended by Section 303 of Pub.L. 93-282
(88 Stat. 137) and Section 333 of Pub.L. 91-616, the Comprehensive Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act of 1970 (42 U.S.C. § 4582), as amended by Section 122(a) of Pub.L. 93-282, the Comprehensive Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act Amendments of 1974 (88 Stat. 131). As authorized by subsection (g) of Sections 408 and 333, the federal government has issued regulations implementing the provisions of those sections. Sections 408(f) and 333(f) provide for fines for violations of those regulations. 42 C.F.R. Section 2.53(b) provides:
 (b) Financial and administrative records. Where program records are reviewed by personnel who lack either the responsibility for, or appropriate training and supervision for, conducting scientific research, determining adherence to treatment standards, or evaluating treatment as such, such review should be confined as far as practicable to administrative and financial records. Under no circumstances should such personnel be shown caseworker or counsellor notes, or similar clinical records. Programs should organize their records so that financial and administrative matters can be reviewed without disclosing clinical information and without disclosing patient identifying information except where necessary for audit verification.
(Emphasis added.)
In case "patient identifying information" must be revealed, Section 2.54 sets forth the required procedure to be followed by the custodian of the records and the auditing examiner. This procedure places certain requirements on the auditing examiner including certain written assurances about the confidentiality of patient identifying information such as the "specific purpose for which a record of patient identifying information is being retained by or on behalf of the examiner . . . ." 42 C.F.R. Section 2.54(c)(2). It would be inappropriate for this office to advise the personnel of the Department of Mental Health and the State Auditor's Office to incur liability for fines by violating these regulations. Furthermore, this office would advise the Department of Mental Health and the State Auditor not to reveal or examine "caseworker or counsellor notes, or similar clinical records" until there has been a determination by a court of law that they would not incur any liability for violation of the regulations. 42 C.F.R. Part 2, Subpart E, provides a procedure whereby a court order under Section 408(b)(2)(C) and Section 333(b)(2)(C) can be obtained allowing for disclosure for "good cause."
With the exception of the drug and alcohol abuse records noted above, we conclude that the Office of the State Auditor is entitled to access to patient medical records of the Department of Mental Health to the extent that such records relate to the duty of the State Auditor to postaudit the financial condition of the Department and its facilities as discussed in the "Performance Audit" section of this opinion. However, any patient medical records provided to the State Auditor by the Department shall not be divulged by the State Auditor in such a way to reveal personally identifiable information.
Patient Death Records
Another issue posed in the opinion requests is whether or not the Office of the State Auditor is entitled to receive access to patient death records.
The provisions of Section 630.145.1, RSMo 1986, indicate that notwithstanding the provisions of Section 630.140, a residential facility or day program operated, funded or licensed by the Department may release to a patient's or resident's next of kin, or other responsible parties, the information that the person is presently a patient, resident or client in the facility or program, or that the person is seriously physically ill, and shall notify a voluntary patient's or resident's next of kin, or other party responsible for the costs incurred by such patient or resident, of the admittance of such patient or resident. Also, upon the death of a patient or resident, the facility shall notify his next of kin, guardian or conservator, if any, about the death and its causes. Thus, under the plain language of the provisions of Section 630.145, RSMo 1986, there is no prohibition against the disclosure of patient death records to the Office of the State Auditor.
Also, as we have previously suggested, the statutory provisions of Section 630.080, RSMo 1986, provide that the State Auditor shall have access to all records maintained and established by the Department. In addition, Section630.140.3(4), RSMo 1986, indicates that the facilities or services may disclose information and records to qualified personnel for the purpose of conducting management audits,financial audits, program evaluations or similar studies; provided, that such personnel shall not identify, directly or indirectly, any individual patient, resident or client in any report of such research, audit or evaluation, or otherwise disclose patient, resident or client identities in any manner. Therefore, we conclude that there is no prohibition under the provisions of Section 630.140.3(4), RSMo 1986, to prevent disclosures of patient death records to the Office of the State Auditor, save the limitations discussed in the "Performance Audit" section of this opinion.
As a result, we conclude that the Office of the State Auditor is entitled to receive access to patient death records to the extent that such records relate to the duty of the State Auditor to postaudit the financial condition of the Department and its facilities. Blanket assertions of "potential litigation" will not suffice to prevent disclosure of patient death records to the Office of the State Auditor. See State ex rel.Friedman v. Provaznik, 668 S.W.2d 76, 80 (Mo. banc 1984). However, the patient death records provided by the Department to the State Auditor shall not be divulged by the State Auditor in such a way to reveal personally identifiable information.
Abuse and Neglect Investigation Reports
Another issue raised in the opinion requests is whether or not the Office of the State Auditor is entitled to receive access to abuse and neglect investigation reports.
As was previously indicated, Section 630.080, RSMo 1986, provides in part that the State Auditor shall have access toall records. The words "any" and "all" have been described as the most comprehensive words in the English language. North v.Hawkinson, 324 S.W.2d 733, 744 (Mo. 1959). The word "shall" is generally construed as mandatory and not permissive. State exrel. Hopkins v. Stemmons, 302 S.W.2d 51, 54 (Mo.App. 1957). As a result, unless the Office of the State Auditor is entitled to receive access to abuse and neglect investigation reports, the State Auditor shall not have access to all records. Likewise, unless the State Auditor shall have access to the abuse and neglect investigation reports, there is a limitation upon the authority of the State Auditor. In other words, such a construction would repeal by implication that the State Auditorshall have access to all records. Similarly, such a construction would repeal by implication the authority of the State Auditor under Section 29.130, RSMo 1986, to have free access to all of the offices of the state for the inspection of such books, accounts and papers as concern any of her duties. The law does not favor repeal by implication; and where there are two or more provisions relating to the same subject matter, they must, if reasonably possible, be construed so as to maintain the integrity of both. Gross v. Merchants-Produce Bank,390 S.W.2d 591, 598 (Mo.App. 1965). Therefore, we conclude that the Office of the State Auditor is entitled to receive access to the abuse and neglect investigation reports under the provisions of Section 630.080, RSMo 1986, to the extent that such records relate to the duty of the State Auditor to postaudit the financial condition of the Department and its facilities as discussed in the "Performance Audit" section of this opinion.
Physician Peer Review Minutes or Records
Another issue that has been raised in the opinion requests is whether or not the Office of the State Auditor is entitled to access to physician peer review minutes or records where review of patient care was the subject of the meeting. The statutory provisions relating to the peer review process are found in Chapter 537, RSMo 1986. Section 537.035, RSMo 1986, refers to the activities of peer review committees. In this regard, a peer review committee is defined in Section537.035.1(2), RSMo 1986, as follows:
 (2) "Peer review committee", a committee of health care professionals with the responsibility to evaluate, maintain, or monitor the quality and utilization of health care services or to exercise any combination of such responsibilities.
Section 537.035.4, RSMo 1986, relating to the proceedings of a peer review committee provides as follows:
 4. Except as otherwise provided in this section, the proceedings, findings, deliberations, reports, and minutes of peer review committees concerning the health care provided any patient are privileged and shall not be subject to discovery, subpoena, or other means of legal compulsion for their release to any person or entity or be admissible into evidence in any judicial or administrative action for failure to provide appropriate care. Except as otherwise provided in this section, no person who was in attendance at any peer review committee proceeding shall be permitted or required to disclose any information acquired in connection with or in the course of such proceeding, or to disclose any opinion, recommendation, or evaluation of the committee or board, or any member thereof; provided, however, that information otherwise discoverable or admissible from original sources is not to be construed as immune from discovery or use in any proceeding merely because it was presented during proceedings before a peer review committee nor is a member, employee, or agent of such committee, or other person appearing before it, to be prevented from testifying as to matters within his personal knowledge and in accordance with the other provisions of this section, but such witness cannot be questioned about testimony or other proceedings before any health care review committee or board or about opinions formed as a result of such committee hearings.
In State ex rel. Chandra v. Sprinkle, 678 S.W.2d 804 (Mo. banc 1984), the Missouri Supreme Court determined, among other matters, that no peer review privilege existed under Missouri law for factual statements. Following Chandra, the General Assembly of Missouri amended Section 537.035.4 to provide as set forth above. Thereafter, in State ex rel. Faith Hospital v.Enright, 706 S.W.2d 852 (Mo. banc 1986), a hospital brought an original action in prohibition seeking to prohibit the trial judge from allowing plaintiffs in a malpractice action, among other matters, to discover peer review committee documents. The plaintiffs had requested the relator to produce peer review committee reports relating to the performance of one of the defendant physicians, not only for the surgery in which the alleged malpractice was committee, but also with respect to other patients from 1980 until the date of the complained of surgery. The plaintiffs' request sought peer review committee reports concerning the health care provided to a patient. The Missouri Supreme Court held that the information the plaintiffs desired fell squarely within the exemption from discovery created by the General Assembly in Section 537.035.4, RSMo 1986. The Court pointed out that this statutory provision expressed the public policy of the state that peer review committee proceedings, to the extent that they address the health care provided any patient, were immune from discovery. As a result, the Court concluded that prohibition was appropriate in that case to the extent that discovery was circumscribed by Section 537.035.4, RSMo 1986.
After due consideration, we conclude that, subject to the limitations set forth in the section of this opinion entitled "Performance Audit," the State Auditor is entitled to receive access to physician peer review minutes or records where review of patient care was the subject of the meeting. In this connection, it is our view that the decision of the Supreme Court in the case of State ex rel. Faith Hospital v. Enright,supra, held only that peer review committee proceedings, to the extent that they address the health care provided any patient, were immune from discovery in a private action. However, the decision by the Missouri Supreme Court in the Enright case was in no way based upon any holding that records declared to be confidential by Section 537.035.4, RSMo 1986, could not be inspected by the State Auditor in order to conduct a postaudit of the Department of Mental Health and its facilities. In addition, the cardinal rule of statutory construction is to ascertain the intention of the lawmaking body and as far as possible to give effect to the intention expressed. HouseholdFinance Corporation v. Robertson, 364 S.W.2d 595, 602 (Mo. banc 1963). In reviewing the confidentiality provisions of Section537.035.4, RSMo 1986, it is apparent that the intent of the Legislature is to protect the privacy of patients and physicians concerning the health care provided a patient. This legislative intent is not abrogated by allowing the State Auditor access to physician peer review minutes or records where review of patient care was the subject of the meeting. Section 29.070, RSMo 1986, provides in part that every examiner appointed by the State Auditor shall, before entering upon the duties of his appointment, take and file in the Office of the Secretary of State an oath which, among other matters, indicates that he will not reveal the condition of any office examined by him or any information secured in the course of any examination of any office to anyone except the State Auditor. Section 29.080, RSMo 1986, provides in part that for any violation of this oath of office or of any duty imposed upon him by Chapter 29, any examiner shall be guilty of a felony. Also, in Attorney General Opinion No. 209, Lehr, 1975, a copy of which is enclosed, it was held in part that raw files, work papers, and other documents and meetings held preparatory to the issuance of signed audit reports of the State Auditor shall not be open to the public. Lastly, as has been previously suggested, under the provisions of Section 630.080, RSMo 1986, any physician peer review minutes or records where review of patient care was a subject of the meeting provided by the Department to the State Auditor shallnot be divulged by the State Auditor in such a way to reveal personally identifiable information. As a result, if the State Auditor is allowed access to the physician peer review minutes or records where review of patient care was the subject of the meeting, all the applicable statutes are given effect. The state Auditor is allowed to exercise her statutory authority and the privacy of the individuals covered by the provisions of Section 537.035.4, RSMo 1986, is protected and the legislative intent is accomplished.
In summary, it is our conclusion that, to the extent that such records relate to the duty of the State Auditor to postaudit the financial condition of the Department and its facilities, the Office of the State Auditor is entitled to access to physician peer review minutes or records where review of patient care was the subject of the meeting. However, the physician peer review minutes or records shall not be divulged by the State Auditor in such a way to reveal personally identifiable information.
Records Relating to Litigation Against the Department
In her opinion request, one of the issues posed by State Auditor Kelly is whether or not the State Auditor is entitled to receive access to records relating to litigation pending against the Department of Mental Health and its facilities. In his opinion request, Dr. Schafer raises the issue as to whether or not the State Auditor has a right of access to information which is protected by the attorney-client privilege or work product privilege because the matter is in litigation, or to information which, if disclosed to the public, would compromise the litigation strategy of the state. In considering the foregoing issues, we are not precisely aware of the documents involved in the dispute or the nature of the factual circumstances surrounding any alleged attorney-client or work product privileges. Therefore, we cannot specifically answer the questions that have been presented. However, for the convenience of the parties, we will state generally our views.
We believe that the attorney-client privilege and the work product privilege are as applicable to departments, agencies, institutions, officers, and employees of state government as to any other party litigants. These privileges facilitate equitable litigation, and the Department of Mental Health is fully entitled to the protections thereby afforded. Therefore, in situations wherein the attorney-client privilege or the work product privilege is properly assertable in pending or imminent litigation, we believe the State Auditor is not entitled to access to litigation records when the Department properly
asserts either privilege — the reason being, in part, that if disclosure of otherwise privileged records is afforded to the State Auditor, the Department's attorney-client privilege or work product privilege may be deemed as waived during subsequent litigation proceedings. In addition, if the Department were to disclose information to the State Auditor in pending or imminent litigation where the attorney-client privilege or work product privilege were properly assertable, this could result in adversarial attempts to obtain that information from the Office of the State Auditor.
On the other hand, the parties' attention is directed to the case of State ex rel. Great American Insurance Co. v.Smith, 574 S.W.2d 379 (Mo. banc 1978). In the extensive discussion involving the doctrine of attorney-client privilege, and other matters, the Missouri Supreme Court pointed out that only the actual attorney-client communications are privileged. The Court indicated that this does not mean that discoverable, factual information can be made privileged by mere recital between an attorney and client during confidential communications. The Department should assert the attorney-client privilege or the work product privilege only in those situations in which the privilege is properly applicable, and such assertion should not be relied upon in inappropriate circumstances to defeat the access of the Office of the State Auditor to litigation records to which it is clearly entitled.
Finally, the State Auditor's access to litigation records is limited not only by the limitations discussed in the "Performance Audit" section of this opinion but also to those records actually in the possession of the Department. Any records relating to pending or imminent litigation against the Department, which are provided by the Department to the State Auditor, shall not be divulged by the State Auditor in such a way to reveal personally identifiable information, and the Office of the State Auditor is reminded of the confidentiality provisions of Sections 29.070 and 29.080, RSMo 1986.
Conclusion
It is the opinion of this office that:
1. The State Auditor is not permitted to conduct performance audits of the Department of Mental Health and its facilities, but may postaudit the financial condition of the Department at its facilities.
2. To the extent that records relate to the duty of the State Auditor to postaudit the financial condition of the Department of Mental Health and its facilities, the Office of the State Auditor is entitled under the provisions of Section630.080, RSMo 1986, to receive access to the following records of the Department of Mental Health in its audit examination of the Department and its facilities:
A. Patient medical records, except drug and alcohol abuse records subject to federal confidentiality regulations;
B. Physician peer review minutes or records where review of patient care was the subject of the meeting;
C. Abuse and neglect investigation reports;
D. Records of patient death cases.
3. To the extent that records relate to the duty of the State Auditor to postaudit the financial condition of the Department of Mental Health and its facilities, the Office of the State Auditor is entitled under the provisions of Section 630.080, RSMo 1986, to receive access to records relating to litigation pending against the Department of Mental Health in its audit examination of the Department and its facilities. However, where the doctrine of attorney-client privilege or work product privilege is properly assertable in pending or imminent litigation, the State Auditor is not entitled to access to those records.
4. Any of the foregoing records provided by the Department of Mental Health and its facilities to the State Auditor shall not be divulged by the State Auditor in such a way to reveal personally identifiable information, and the Office of the State Auditor is reminded of the confidentiality provisions of Sections 29.070 and 29.080, RSMo 1986.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General
Enclosures: Opinion No. 209, Lehr, 1975 Opinion No. 117, Keyes, 1977